STATE v. MURRELL.

1. This court will not hear an appeal by one convicted of murder who has escaped from custody and is still at large. His appeal was suspended, no motion to dismiss having been made.
2. There is no error in refusing to charge correct propositions of law in the language adopted by counsel in their requests, where the same principles have already been presented to the jury in the general charge.
3. Error cannot be imputed to an isolated extract from the charge, when the connection in which it was used, gives to it a meaning that is free from error.
4. Where one of two defendants claims that he had nothing whatever to do with the homicide or the antecedent difficulty, there was neither error nor impropriety in the judge stating to the jury the undisputed fact that such defendant "does not set up that he was ever assaulted by the deceased, and no other witness testifies that he was assaulted by the deceased."

[1] This completes the cases of November Term, 1889.—REPORTER.

5. A request to charge that one assaulted with a deadly weapon was not required by the law to flee, but might repel force with force, and, if necessary to save himself from death or serious bodily harm, kill his assailant, ignores the necessary element that the party so assaulted must have been himself free from blame in bringing on the difficulty; and therefore the judge did not err in adding to this request that "the elements of self-defence must concur to entitle defendant to the benefit of that law."

6. There is no error in refusing to charge a request based upon a state of facts which has no application to the only defences interposed.

7. In response to an inquiry from the foreman of the jury, in a murder case, the judge informed the jury that "the law provides that in certain cases the jury are allowed to supplement the verdict with a recommendation to mercy, and that of itself changes the verdict. In cases like this a recommendation to mercy would have its influence with the court. It would not be binding upon the court, but would have its influence upon the court." While it would have been better for the judge to have simply answered the inquiry of the foreman, his statement as to the effect of a recommendation to mercy was not legal error, nor ground for a reversal of the judgment below.

Before NORTON, J., Edgefield, November, 1889.

This was an indictment found against Whitfield Murrell and Willie Carpenter for murder. The judge charged the jury as follows:

GENTLEMEN OF THE JURY: The defendants here are indicted for murder. Attention has been called to the form of the indictment. The indictment, in its first count, charges that one of the defendants shot the pistol which made the mortal wound, and that the other was present, aiding and assisting in carrying out the murderous purpose of the one who shot the pistol that did cause the mortal wound; and in the other count the other defendant is charged with having shot the pistol, and the other with aiding him in some way. It does not make any difference, which of the defendants shot the fatal wound, but it does make a difference whether they were both concurring in the act or not. Now, when a felony is about to be committed, when one person is about to kill another, or when robbery is about being done, anything of that kind, the sheriff, or a constable, is bound to interfere and prevent the felony from being committed, but a pri-

vate citizen is not bound to do that; the law authorizes a private citizen to do it, but it does not require him to do it. He may stand by innocently and see his neighbor shot to death, but if he does not concur in the shooting, that is, if he does not do some positive act which will show that he is encouraging the one who does the shooting, or that he has a common intent with him, or is himself engaged in the same difficulty—some of those things— some one or more of them, then he would not be guilty. So, in the application of the testimony you are to consider the cases of these two defendants separately.

You are first to inquire whether the deceased was killed by a shot inflicted on the 15th of June, and lingered from that wound until the 21st of June, in the present year, or not; and if he was, you are to inquire, not especially who did the killing, but whether the one or the other of these defendants did the killing. If they did, then, if nothing more appear, the one who did the killing would be necessarily guilty of murder, if nothing appear; that is, the law implies malice from the killing of one person by another, but whenever the facts and circumstances attending the killing are testified to, then—I should not say testified to, be- cause sometimes testimony might be given which would pretend to give the circumstances, when the jury might disbelieve that testimony altogether—so when circumstances attending the kill- ing have been testified to in such manner that you believe those circumstances as they have been testified to, then all presumption arising from the killing, whether it was with a deadly weapon, or however it was done, the presumption arising from the mere killing would be done away with, and you would have to judge whether or not there was malice from those circumstances—from such circumstances as you think have been properly proven be- fore you.

I believe I did not tell you in so many words what murder is. Murder is the killing of any person with malice aforethought, either express or implied. Then the question is raised upon the definition of malice. Malice is commonly understood in the country as ill-will towards another; and that is in law the defini- tion of express malice. Express malice is proven by outward circumstances, such as previous threats, antecedent grudges, lying

in wait, and such as that. Implied malice is any unlawful act intentionally done—that is, a killing intentionally done, without just excuse, would constitute evidence to your minds of malice. Having been convinced now that one of these defendants did the killing, then you are to take into consideration the circumstances, and see whether they constitute a just excuse for the killing or not. If they do, then all malice would be shown to be absent; then the defendants would be able to sustain their plea of self-defence.

But there is an intermediate grade of homicide, that of man-slaughter, which is the unlawful killing of any person without malice, express or implied. Very often there is a confusion in the minds of jurors, and sometimes, I think, in the minds of attorneys themselves, in regard to the distinction which ought to be made. Malice is always premeditated—the killing is always intentional—it must have been formed in the intent to kill, must have been formed in the mind of the person who does the killing deliberately so as to show that he had a well formed purpose to do the killing. It needn't, however, have existed for a year, nor for a month, nor for a week, or day, or hour; all that is required is that there should have been time to have formed the purpose, a deliberate intention, and then, if there was time to form that deliberate intention, you are to determine whether it was done under such circumstances as would justify the killing, or as would mitigate the killing to manslaughter. If two persons incidentally met and commenced by words, or even by blows with the fist, they being equal in strength and activity, without any intention exist-ing in the mind of either to kill the other when the quarrel and the assaulting began; but the fight goes on from blow to blow, and from one degree to another, until the one or the other is killed, that is said to be a killing in sudden heat and passion, and it would not matter in a case of that kind who began the diffi-culty; it would not matter even who began the quarrel, it would not even matter who struck the first blow; but the person who formed the design to kill the other under those circumstances when they are in the fight caused in that sudden way, without any premeditation, the one who killed the other would be guilty

of manslaughter, unless other circumstances concurred which would reduce it to self-defence.

Self-defence is where one, being without fault in bringing about a difficulty, and believes, and has the right to believe, that he is in imminent danger of losing his life, or a limb, or of great bodily harm from an assault from which he has no other probable means of escape, and under those circumstances kills his assailant. Now, in order to constitute self-defence, you perceive that there are several things that are necessary. In the first place, it is not like a case of manslaughter, where it does not matter who is at fault in bringing about the difficulty. It is that the person who kills the other is required to have been without fault in bringing about the difficulty. He cannot begin by assaulting, or beating, or striking his adversary—begin the affray—and say he was without fault in bringing about the difficulty. It does not matter in making the plea of self defence who was in fault in bringing about a difficulty. If the defendants here, in your opinion, killed the deceased, or either of them killed the deceased, and the other concurred; or if one killed the deceased and the other not concurring, he would be guilty in the last instance, and not the other, and both would be guilty in the other event if either of them was in fault in bringing about the difficulty; or if the one who did the killing was in fault in bringing about the difficulty, he could not plead the plea of self-defence successfully, and you would not inquire further as to the plea of self-defence. Then he must believe that he was in danger of the loss of his life, or his limb, or of serious bodily harm from the assault of the deceased; he must have believed that.

If Carpenter says that he killed the deceased, if you believe that statement, did he believe that he was in actual danger of the loss of life or limb, or serious bodily harm from the assault of the deceased? He must not only believe that, but he must have believed further that he had no other probable means of escape from the assault; that he had no other probable means of saving his life, or of saving himself from the threatened attempt. If he believed that, then the next step in making out the plea of self defence would have been reached. If he didn't believe it, then you needn't go any farther, because the plea of self-defence

could not avail him; he would not be entitled to it. And he must not only have believed it, but a man of ordinary reason and firmness placed in the same circumstances which surrounded him must have believed the same thing. It is not what one of you would have believed under the circumstances; it is what a man of ordinary firmness would have believed under the same circumstances—a man of ordinary firmness and reason; because one of you may be a man of extraordinary reason and firmness, and it would not be fair to hold the defendant up to the same standard that you yourself would have held yourself up to; and one of you may be a man of very weak nerves, and it would not be fair to the lives of citizens generally to excuse a defendant upon what a man of less than ordinary firmness and reason would have believed under the same circumstances; and that man of ordinary reason and firmness—it is not what he would have done, but it is what he would have done if he had been endeavoring to carry out the law. Because a man of ordinary reason and firmness don't always try to carry out the law; that is, he must have been trying to avoid the necessity of killing his adversary. If all those concurrent beliefs—ingredients—have been made out to your satisfaction, gentlemen of the jury, then the defendant is entitled to his plea of self-defence; if they have not, if one of them is lacking, then the defendant would not be entitled to his plea of self-defence.

When a plea of self-defence, *alibi*, or any of those pleas are set up, if the State has made out a *prima facie* case, then it is the duty of the defendant to prove by the preponderance of the testimony the defence that he sets up. Now, on this side of the court there is in favor of the guilt or innocence of defendant a necessity that the State should prove the guilt of the defendant beyond a reasonable doubt, such doubt as you would act upon in the transaction of your own affairs in life; a doubt for which you can give a reason, not a mere fanciful or whimsical doubt. On the other side of the court the case is always determined by the preponderance of the testimony. That is to say, in a civil case the plaintiff, when the burden of proof is on him (which it usually is), is bound to make out his case to the satisfaction of the jury by a preponderance of the testimony. If the testimony is

exactly equally balanced, then the plaintiff would lose his case in such a case as that, and you ought to find a verdict for the defendant.   So, if the defendant affirms anything, he must prove it by the preponderance of the testimony ; that is to say, there must be greater weight on the one side than on the other ; and so when the defendant here goes to make out his plea of self-defence, he must make it out by the preponderance of the testimony, so as to show, or rather so as to prevent the jury from believing beyond a reasonable doubt his guilt.   The defendant Murrell I do not understand to have set up in his plea self-defence.

Mr. Tompkins (addressing the court): He sets up *non est factum ;* that he did not do anything at all.

The Court (resuming charge): He does not set up that he was ever assaulted by the deceased, and no other witness testified that Murrell was assaulted by the deceased.   He says that he merely stood by while this fight was going on between Carpenter and Yonce, and that he simply did not interfere and did not do anything at all ; that he is not to be held guilty under the law which I first gave you—that one is not bound, who is a mere citizen, a mere looker on, to interfere with a quarrel or fight between parties who are engaged in a fight of this kind.   So that your inquiry in regard to Murrell would be, whether or not he is guilty ; whether the State has made out its case as against him either as having shot the fatal shot, or as having encouraged, aided Mr. Carpenter in the execution of his unlawful purpose, if it was unlawful.   That is the position in which he stands.

Now, recurring to the evidence.   You are the exclusive judges of what has been testified to, and as to the weight of the testimony,   I can only aid you by giving you some general rules by which you are to be governed in determining the weight which you ought to give to the testimony.   In the first place, as stated to you by defendants' counsel, you are presumed to know the witnesses, each and every one of them, and you are supposed to give just such weight to them as that knowledge, coupled with other rules that I shall give you, will entitle their testimony to. In this case there have been witnesses brought to impeach the character of other witnesses.   You are to consider that circumstance.   The manner of testifying by witnesses on the stand has

been called to your attention; that is also a circumstance which is to enter into your consideration. You are to consider any contradictions that the witnesses have been proven to have made, or by their own confessions have made in this case. You are to consider whether the witnesses have wilfully sworn falsely to any fact, or whether they have been mistaken in their statements in regard to any fact which has been disproven by other witnesses or by circumstances which you think have been proven in the case. You are not to take into consideration the class of society from which witnesses are brought, but every witness is to stand upon his own individual merit. , You are presumed to know the witnesses, and you are to judge of them by that knowledge and by the other circumstances and rules that I have laid down to you. Then, if you believe a witness to have sworn wilfully false about a material matter, the adage is often quoted, that if he is false in one thing, he is false in all, and that you may apply or not as you think it deserves to be applied. If he is mistaken or not—wilfully mistaken—it might lessen your idea of the accuracy of the witness or the reliability of the witness; but if he was honestly mistaken, of course you would not impute any dishonesty to him on account of an honest mistake.

The last thing I shall call to your attention is the opportunity to know what the witness testifies to. Witnesses very often get up and make statements that they know particular things, and when cross-examined they show by the cross-examination that they haven't the opportunity to know what they have testified to. Sometimes they are shown by other witnesses not to be able to know what they have testified to. It is for you to take all these matters into consideration in weighing the testimony of the witnesses. Upon this question of evidence your attention has been called to the fact that circumstantial evidence is to a considerable extent relied upon in this case. Counsel for defendants laid down to you a little more strongly than the law authorizes upon that subject. He said that it must be inconsistent with every other possible theory. I suppose he did not mean to lay it down so strongly. The law is this: the circumstances must be so strong that they are inconsistent with any other reasonable hypothesis than that of the defendants' guilt. If they are that

strong, in all probability you would be ready to say that they were strong enough to satisfy your mind beyond a reasonable doubt of the guilt of the defendants. You must be satisfied beyond a reasonable doubt of the guilt of the defendants—both of them, or either of them—before you can find a verdict against them. If you are in doubt as between the grades of murder and manslaughter, that is, as to whether there was malice or want of malice, then you are to give the prisoner the benefit of that doubt, and find against them only the lower degree ; and you cannot find either murder or manslaughter, unless you are satisfied beyond a reasonable doubt on the whole testimony in the case of their guilt.

Argument was made to you about the defendants being poor and unable to procure witnesses. That ought not to influence your verdict, because the solicitor told you properly that the defendant was entitled to the process of the court in a case like this, to bring his witnesses in court at the expense of the State. Counsel for defence mentioned one fact which I will call your attention to, that the number of witnesses would govern ; and I suppose it would if all witnesses were equally honest, intelligent, and had equal opportunities to know ; but where, in your opinion, there is a difference in the witnesses, you may believe one witness in opposition to a hundred ; you must believe exactly that which the testimony, as a whole, satisfies your mind is true. You cannot believe as you please ; you may please to believe one thing, but you must believe that of which the evidence satisfies you, whether it is testified to by one or a hundred, whether it is by the defendant or by disinterested witnesses, whether it is by some witness who has a bias or by a witness who has no bias.

I am requested by defendants' counsel to charge you: 1. "That while the law does presume malice from the mere fact of intentional killing, yet when the facts attending the homicide are brought out, there is no room for the presumption. The State must prove the malice from the facts and circumstances attending the homicide without any aid from the artificial presumption, and, like all other facts, it must be proved beyond a reasonable doubt." I so charge you. You will take this though, and all other requests to charge, in connection with the main charge which I have

given you, so as not to be confused by it, because these are in detached sentences or paragraphs, and do not contain the whole law on the subject.

2. "That one attacked with a deadly weapon may repel force by force, and if there is a manifest intent and endeavor to commit a known felony upon him, he is, under such circumstances, not obliged to retreat, but may pursue his adversary until he finds himself out of danger, and if in such a conflict he happen to kill his adversary, such killing is justifiable and in self defence." I so charge you, but the other elements of self-defence must concur to entitle him to the benefit of that law.

3. "That if the jury find from the evidence that the defendants were assaulted by the deceased with a pistol, and reasonably believed at the time that they were in danger of loss of life or limb, or serious bodily harm, they were not obliged under the law to flee, if by so doing the danger was increased, or would encourage the assailant to repeat the assault, if by so doing they would be less prepared to resist or repel the assault." I refuse to charge you that. Counsel desire to have the law charged in a particular phase—they must conform it to the testimony. There is no testimony here showing that the defendant, Murrell, was ever assaulted, or anything of that kind. I have charged you, anyhow, the law which covers that request, I think, very fully.

4. "That the law, recognizing the imperfections of human nature, does not require that one charged with homicide should show that there was no other possible means of escape, when he struck the fatal blow, but he is only called upon to satisfy the jury, that, under all the circumstances by which he was surrounded, he really believed that there was a necessity for taking the life of his adversary in order to preserve his own, or to save him from serious bodily harm, and that, in the opinion of the jury, those circumstances were such as would justify such belief." I so charge you. In the case in which that law was announced the objection of the Supreme Court was to the use of that word "possible," but they did not mean to modify the elements of self-defence, as I have laid them down to you in my main charge. The law is correctly laid down in that proposition.

5. "That if the jury believe from the evidence, that the defen-

dants were without fault in bringing about the difficulty and killed the deceased under circumstances calculated to excite the fears of a man of ordinary firmness, that it was necessary to save their lives or limbs or persons from serious bodily harm, and that they really acted under the influence of those fears, and not in a spirit of revenge or malice, they are not guilty and the verdict should be not guilty." There is no evidence that Murrell was ever in danger of his life or limb, or that he was ever assaulted. That request is made to apply to both, and I refuse to charge it.

6. "If the jury believe from the evidence that the facts and circumstances as they appeared to the prisoners, were sufficient to excite the belief of a reasonable man, of ordinary firmness, that it was the purpose of the deceased to kill them or do them some serious bodily harm, and that the deceased was the assailant, and the prisoners acted under the influence of that belief and not from a spirit of malice or revenge, then under the law the prisoners are excusable, not guilty, and should be acquitted." I refuse to charge you that, for the same reasons that I refused to charge you the other.

7. "That where a prisoner is sworn in his own behalf, the jury may attach such importance to his testimony as their conclusions, honestly formed, may warrant, and they may accept his statements in his own behalf, in preference to the sworn testimony of any or all other witnesses sworn in the case." I so charge you. You are to weigh the testimony, and if you honestly believe that either of the defendants has told the truth, or both of them—of course, you are to be governed by what you believe to be the truth of the case.

8. "That the jurors, and each of them, are required by law, to give to the prisoners the full benefit of all reasonable doubts, which they, or any one of them, may entertain from the evidence." That is not worded exactly as counsel would like to have it worded. I cannot charge it exactly in that form. I charge it in this form: That the jurors, and each of them, are required by law, to give to the prisoners the full benefit of all reasonable doubt, each is to act on his own doubt and not on the doubts of another.

9. "That if the jury believe from the evidence that although Whitfield Murrell was actually present when the homicide was committed, if he took no part in the homicide, and did not act in concert with William Carpenter, he will not be a principal or accessory, although he did not endeavor to prevent the homicide." I so charge you.

10. "That the jury must find from the evidence, before they can convict Whitfield Murrell, that he did some act on his part which unmistakably evinced a design to encourage, incite, approve of, or in some manner afford aid' or consent to, the act." I so charge you.

11. "That if the jury find from the evidence that Whitfield Murrell was not aiding and abetting, although present when the homicide was committed, and made no effort to prevent the same, if he did not concur in the intention to commit the homicide, he is not guilty and should be acquitted." I so charge you.

12. "That if the jury find from the evidence that there was no motive for the commission of the homicide, it is a circumstance to be duly considered by the jury in weighing the question of guilt." I so charge you ; but it is not necessary in every case that the motive should be discovered before you can find a verdict of guilty. You understand that the motive is that which induces a person to act ; and you may not be able to see any possible inducement to the defendants to have acted in a certain way, whatever way you may think they acted ; but if you should come to the conclusion that it was murder or manslaughter, although the motive may not be apparent, yet it would be only a circumstance to be considered by you in coming to your verdict, and you would not say that because you could not see any motive, that therefore the malice did not exist. You would not be able to say that ; but you would take into consideration that question of malice, whether you are able to see any motive or not. That is all this request means, and I only wanted to explain it to you, because the request is in itself correct.

13. "That in law the mere fact that Whitfield Murrell was present when the homicide was committed, is not sufficient of itself to convict him, either as principal or accessory, unless the jury find from the evidence that he did some act or was in sym-

pathy with the party who committed the homicide." I so charge you.

There will be three forms of verdict that you may render in this case. "Guilty," which would mean guilty of the highest crime charged, which would be murder; and it would not matter whether you concluded that the one or the other of these defendants committed the actual act of shooting the ball which killed the deceased, if the other was present aiding and abetting, then the form of your verdict would be "guilty," simply a verdict of "guilty," which would mean both the defendants were guilty of the highest crime charged—murder. Or you might find the defendants guilty of manslaughter—if you found both were equally guilty, you could find them guilty; just say, "Guilty of manslaughter." Or if Murrell did nothing and Carpenter was entitled to his plea of self defence, then your verdict would be "not guilty." And you might find one guilty without finding the other guilty. It would be competent for you to find the one guilty of the one degree of homicide, and the other guilty of another degree of homicide; but if you make a distinction in the finding of your verdict, you should in writing your verdict specify that distinction. For instance, suppose you should say that we find William Carpenter guilty of murder and G. Whitfield Murrell guilty of manslaughter, that would be the form of your verdict. I am just indicating that as a specimen, that you might not make a mistake in writing the verdict. Or you might find one guilty and the other not guilty. If you do, you ought to specify which one is guilty and which one is not guilty. After you have made out the verdict according to the agreement of the jury, then you will sign your name, Mr. Foreman, and after it write the word "Foreman." Hand the record to the jury.

(Jury brought out of their room at 8.35 p. m., and were asked by the Court if they had agreed.)

The Foreman: No, sir.

The Court: Is it a question of law?

The Foreman: We think so. We wish to know if we can supplement our verdict with a recommendation to mercy.

The Court: Yes, sir. The law provides that in certain cases

\* the jury are allowed to supplement the verdict with a recommendation to mercy, and that of itself changes the verdict. In cases like this, a recommendation to mercy would have its influence with the court; it would not be binding upon the court, but would have its influence upon the court. There is no provision that the court shall be governed by the recommendation, but, of course, the court is always, more or less—owing to the circumstances—governed—influenced, I should say—by the recommendation of the jury.

Jury retired again, and brought in a verdict of "Guilty," with a recommendation to mercy.

Defendants' counsel made and argued motion for arrest of judgment.

Motion refused, and prisoners were sentenced to be hanged January 3, 1890.

It is admitted that the statements of the testimony made by the judge in those portions of his charge to the jury to which exceptions Nos. 3, 5, and 6 are addressed, are correct.

*Messrs. A. S. Tompkins* and *Gary & Evans*, for appellants.

*Mr. Nelson*, solicitor, contra.

June 11, 1890. The opinion of the court was delivered by

MR. JUSTICE McIVER. The defendants in this case having been convicted of murder, gave notice of appeal upon the several grounds set out in the record, but having escaped from jail pending the appeal, and only one of them, to wit, the defendant, Murrell, having been recaptured, his appeal alone will be considered; as this court declines to hear the appeal of a party who evades the process of the court, and refuses to submit himself to its jurisdiction. *Ex parte Pereira*, 6 Rich., 149; *Smith* v. *United States*, 94 U. S., 97; *Bonahan* v. *Nebraska*, 125 *Id.*, 692; *People* v. *Redinger*, 55 Cal., 290, s. c. 36 Am. Rep., 32; *State* v. *Wright*, 32 La. Ann., 1017, s. c. 36 Am. Rep., 274. Inasmuch as there was no motion to dismiss the appeal of the defendant who has escaped from custody, and has not yet been recaptured, we decide nothing now as to that, but will simply confine our attention to the appeal of the defendant, Murrell.

All of the exceptions impute error to the Circuit Judge in his charge to the jury, except the last one, which will be hereinafter specifically stated.   The charge is set out in full in the "Case," and, in justice to the Circuit Judge, should be incorporated in the report of the case, because most of the exceptions impute error in refusing certain requests to charge, which were, in fact, really embraced in the general charge, and, therefore, even if the requests specifically submitted presented correct propositions of law, there would be no error in refusing to charge them specifically in the language of the requests as framed by counsel, where the same principles of law had already been presented to the jury in the general charge.

We will, however, proceed to consider the exceptions *seriatim*. The first is as follows : "Because his honor erred in charging the jury, that 'implied malice is any unlawful act intentionally done— that is, a killing intentionally done, without just excuse, would constitute evidence to your minds of malice.' "   It will be observed, that this exception is based upon an isolated extract from the charge, which, to be properly understood, should be read in the connection in which it was used, for that is the way in which it was presented to the minds of the jury.   So read, we do not see how it can be properly said there was any error.   It seems to be argued, that it was possible for one to kill another intentionally, without just excuse, and yet the killing would amount to nothing more than manslaughter.   Now, even granting this to be so, yet it is quite clear that when this abstract remark is read in connection with what followed in reference to the ingredients of the offence of manslaughter, it is impossible to suppose that the jury could have been misled.

The second exception having been abandoned at the hearing, need not be considered or stated.

The third exception is : "Because his honor erred in charging that he (Murrell) does not set up that he was ever assaulted by the deceased, and no other witness testified that Murrell was assaulted by the deceased."   This statement made by the Circuit Judge is expressly admitted in the "Case" to be strictly correct, and in addition to this, it appears from the charge, as there set out, that when the Circuit Judge, in the progress of his charge,

7—33

said, "The defendant, Murrell, I do not understand to have set up in his plea self-defence," one of the counsel for the prisoners, addressing the court, remarked, "He sets up *non est factum ;* that he did not do anything at all," and the judge resuming his charge, used the language complained of in this exception. How this can be characterized as error of law, or even as an impropriety, we are at a loss to conceive. It is very manifest that the judge was simply calling the attention of the jury to the nature of the defence set up by Murrell, as stated by his own counsel. The statement contained no proposition of law, either correct or otherwise, and at most was a mere repetition of an undisputed fact, preparatory to a consideration of the defence actually set up by the defendant, Murrell.

The fourth exception is in these words : "Because his honor erred in refusing to charge, as requested, that 'one attacked with a deadly weapon may repel force by force, and if there is a manifest intent and endeavor to commit a felony upon him, he is, under such circumstances, not obliged to retreat, but may pursue his adversary until he finds himself out of danger ; and if, in such a conflict, he happen to kill his adversary, such killing is justifiable, and in self defence'—'I so charge you, gentlemen ; but the elements of self-defence must concur to entitle him to the benefits of that law'—but modified the same by the above modification." It is quite clear that the modification was proper, for the request, until so modified, ignored the important element, that the party setting up such defence must not have been in fault in bringing on the difficulty.

The fifth exception is as follows : "Because his honor erred in refusing to charge the third request—'That if the jury find from the evidence that defendants were assaulted by the deceased with a pistol, and reasonably believed at the time that they were in danger of loss of life or limb, or serious bodily harm, they were not obliged, under the law, to flee, if, by so doing, the danger was increased, or would encourage the assailant to repeat the assault, if, by so doing, they would be less prepared to resist or repel the assault'—and in charging as modified, 'I refuse to charge you that, gentlemen. Counsel desire to have the law charged in a particular phase ; they must conform it to the testi-

mony.   There is no testimony here showing that the defendant, Murrell, was ever assaulted, or anything of that kind.   I have charged you, anyhow, the law which covers that request, I think, very fully.' "   The request, as framed, undoubtedly covered the case of both of the prisoners, and as their defences were distinct and different, it certainly had no application whatever to the only defence expressly admitted to have been set up by the appellant, Murrell ; it could, upon that ground alone, have been very properly refused.   But where, in addition to this, it appears that the' legal proposition contained in the request had already been presented to the jury in proper form in the general charge, there can be no doubt that the request was properly refused, especially when presented in an objectionable form.   These remarks apply with equal force to the sixth and seventh exceptions, which need not, therefore, be further considered.

The eighth exception is in the following language : "Because his honor erred in bringing into court the jury and making the following statement : 'By the Court : Have you agreed on your verdict ?   The Foreman : No, sir.   The Court : Is it a question of law ?   The Foreman : We think so.   We wish to know if we can supplement our verdict with a recommendation to mercy ?   The Court : Yes, sir.   The law provides that in certain cases the jury are allowed to supplement the verdict with a recommendation to mercy, and that of itself changes the verdict.   In cases like this, a recommendation to mercy would have its influence with the court ; it would not be binding upon the court, but it would have its influence upon the court.   There is no provision that the court shall be governed by the recommendation, but, of course, the court is always, more or less, owing to the circumstances, governed—influenced, I should have said—by the recommendation of the jury.' "

We cannot say that there was any error of law in the response made by the Circuit Judge to the inquiry from the jury.   It is true, as matter of law, that there are cases in which, by virtue of special statutory enactment, a recommendation to mercy accompanying a verdict of guilty, does have the legal effect of changing the sentence which would otherwise follow, as, for example, arson, rape, and burglary at common law ; and it is equally true that in

cases like the one now under consideration, such a recommendation is not binding on the court, as in the cases of arson, &c., but may, and probably would, have its influence with the court, either in modifying the sentence, if the conviction had been of manslaughter, or in some other way, if the conviction was of the higher grade of offence. This is illustrated not only by common experience, but also by at least one decided case (*State* v. *Frink*, 1 Bay, 165), where, upon a conviction of manslaughter, at a time when that offence was punished by branding in the hand, which had been usually inflicted *instanter* in open court, a recommendation to mercy was allowed to operate a postponement of the execution of the sentence until the prisoner could have an opportunity to apply for executive clemency. While, therefore, it may be, as was suggested in *State* v. *Gill* (14 S. C., 415), that it would have been better, in order to avoid even the appearance of any attempt to influence the jury (which, however, it is due to the Circuit Judge to say, is not even intimated), in a case like this, to have confined the response to the inquiry from the jury to a simple answer to their question, without adding anything as to the effect of a recommendation to mercy; yet when there is no error of law in stating the probable consequences of such a recommendation, we do not feel warranted in making it a ground for reversing the judgment.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that court for the purpose of having a new day assigned for the execution of the sentence heretofore imposed upon the defendant, Whitfield Murrell. The appeal as to the other defendant, Willie Carpenter, is suspended until the further order of this court.