## STATE v. ROCHESTER.

1. PRESUMPTIONS—MALICE.—Where the witnesses have testified to the facts and circumstances surrounding a homicide, there can be no presumption of malice from the killing, but jury must find malice or not from the evidence.

2. CHARGE which might be held illustrative of malice or that it was corrected by subsequent portions of charge as to different degrees of homicide, held error here, because emphasized and made applicable to the facts of this case.

3. MURDER.—CHARGE that if the defendant intentionally killed the deceased, that the purpose which actuated the act was "I mean to kill him because I want to kill him, if that be the motive and purpose, it makes no difference what may be the surrounding circumstances, it is murder," is error, and correct instruction thereafter as to law of manslaughter does not correct error.

4. IBID.—SELF-DEFENSE—HIGHWAY.—If a person be attacked while on his own premises by one at the time in a highway, it is his duty to retreat before taking the life of his adversary, if there be a probability of his being able to escape without losing his life or suffering grievous bodily harm.

5. EVIDENCE that a defendant had been warned that it would be dangerous for him to go to the house of the deceased is competent as tending to influence his conduct.

6. IBID.—In homicide case a request that defendant should work at a point on his farm more distant from where deceased would likely pass is not competent where witness did not give the reason for such request.

Before JOSEPH A. MCCULLOUGH, special Judge, Oconee, November term, 1904. Reversed.

Indictment against Earle Rochester for murder of Walter Mills. From sentence, defendant appeals on following exceptions:

"I. Because the presiding Judge erred in charging the jury as follows: 'A great deal has been said and written as explanatory of malice and to illustrate malice, and men may have different conceptions of what that legal term means. After all, what is malice? It is the intentional taking of human life.' It is respectfully submitted that the presiding Judge erred in giving this definition of malice, and that the same was calculated to mislead the jury, because, (a) proof of an actual intent to kill does not of itself show the existence of malice, for an intentional killing may be excusable, as where it is done in self-defense, or it may be only manslaughter, as where the killing is done in the heat of passion, caused by sufficient provocation; (b) intent to kill is only evidence of malice, and the existence of the intent to kill is material as bearing on the degree of the crime; (c) a killing with malice is where the act is done without legal excuse, extenuation or justification, for if there be any legal excuse, extenuation or justification, the act is not malicious and the homicide is not murder, though it be done with a settled purpose to kill, but it will be, according to circumstances, either manslaughter or justifiable or excusable homicide; (d) malice is the chief characteristic—the grand criterion—by which murder is to be distinguished from other species of homicide, and in no case does the intentional taking of human life constitute murder unless it is done with malice; that is, with a mind regardless of social duty and deliberately bent on mischief, with a wickedness of

disposition, hardness of heart, cruelty or recklessness of consequences.

"II. Because the presiding Judge erred in charging the jury: 'Now, Mr. Foreman and gentlemen of the jury, if you believe beyond a reasonable doubt that the defendant intentionally killed Walter Mills, that the purpose which actuated the act—that the purpose which actuated the pulling of the trigger, was—I mean to kill him because I want to kill him—if that be the purpose, and that be the motive, it makes no difference what may have been the surrounding circumstances, that is murder.' It is submitted that his Honor erred in thus charging, and the same was calculated to mislead the jury, because, (a) intent is thereby made identical with malice; (b) malice is a deliberate and well-formed purpose to take life without justification or excuse; (c) intent is not synonymous with malice, because if the intent be to kill in self-defense it is not unlawful; (d) motive or purpose were made equivalent to malice, whereas motive and purpose are evidence from which malice may be inferred, and the absence of evidence suggesting a motive or purpose may be considered in favor of the accused; (e) the right to take life intentionally in self-defense because the accused wants to protect himself, was ignored in the failure to state the important limitation or qualification to the effect that the intentional taking of life must be without justification or excuse; (f) it does make a difference as to what may be the surrounding circumstances of a killing, for if it be inferred from the surrounding circumstances that the accused took the life of his adversary to save his own life, or to save himself from serious bodily harm, the killing is excusable.

"III. Because the charge of his Honor upon defendant's ninth request to charge was erroneous and misleading to the jury. The request and charge are as follows: 'A person in the rightful possession of lands may lawfully approach any person wrongfully upon the same, and may order the person trespassing to quit the land, and, in the event of

refusal so to do, may use such force as may be necessary to eject such trespasser; and if the person in possession is resisted by force in the attempt to eject such trespasser, he may legally defend himself and repel force by force, using such force as the fierceness of the attack may render neces-sary to defend himself.   When a person is on his own premises, he may stand his own ground.   He is not obliged to retreat, but may stand his own ground and repel force by force, and not retreat, but may pursue his adversary until he find himself out of danger; and if, in the conflict between them, it becomes necessary to kill his adversary, such killing is excusable, and the defendant should be acquitted.   Well, with reference to the ninth request: I can't tell you when, how or under what circumstances one should retreat in order to avoid taking human life.   Of course, a man on his own premises has a greater right there than anybody else, but there might be circumstances which would require him to avail himself of every reasonable way of escape to avoid taking human life on his own premises.   It is a question for you to say, from all the circumstances in the case, whether or not the defendant acted as a man of ordinary firmness and reason would have acted;' whereas, his Honor should have charged the jury, (a) that when a man is attacked on his own premises he may stand his ground—he is not obliged to retreat—but may stand his ground and repel force by force and not retreat, for the law recognizes this dif-ference between being attacked on one's own premises and somewhere else, and the charge was erroneous in not recog-nizing this difference; (b) in charging that there might be circumstances which would require him to avail himself of every reasonable way of escape to avoid taking human life on his own premises, without laying down some rule or principle that would serve as a guide in determining what circumstances, if any, would require a man to retreat when attacked on his own premises; (c) leaving it for the jury to say what circumstances would require a man to retreat on his own premises, without giving the jury any rule or prin-

ciple, thus limiting or qualifying the law of 'the castle,' and thereby leaving the jury to determine both the law and the facts constituting such exception or limitation, if any there be.

"IV. Because his Honor erred in ruling that the witness, John Hoops, could not testify that on the Sunday afternoon preceding the Thursday on which the killing occurred, that he, Hoops, warned defendant, Earle Rochester, not to go over there, meaning to Walter Mills' house, witness having told about the meeting on that Sunday afternoon between Mills and Rochester at the latter's residence, the way in which Mills approached and left the house, the manner of his leaving, and what was said, the seeing of Walter Mills and other men at his house and yard by Hoops and Rochester while in the latter's garden a few minutes after Mills had left Rochester, to all of which the witness had testified; for the reason, (a) that the witness having testified as to part of conversation, it was competent and relevant for him to give the whole conversation; (b) it was competent and relevant as tending to show an apprehension of great danger on the part of the defendant, and, therefore, his good faith in acting as he did at the time of the fatal encounter, and to negative the idea of malice on the part of the defendant.

"V. Because his Honor erred in excluding the answer of Mrs. Annie R. Rochester to the question, 'When did you tell him to go up there?' meaning to the west end of his field, where defendant was at work, when she testified she saw Walter Mills come down the hill, cross the bridge, and come on through the bottom towards the end of the field where defendant was then working, Mills having thus returned in a short time after witness saw him leave Rochester in the bottom, and heard Mills say he would return in a short time and fix him (Rochester). It is respectfully submitted that the witness having testified without objection as follows, 'I told him (Rochester) to come to this end, on the upper side of the place, * * * because I didn't want any trouble with him (Mills),' it was competent and relevant

for witness to answer said question; it was competent and relevant to show such substantially contemporaneous facts and circumstances as were calculated to explain or elucidate the entire transaction, also as tending to show the state of mind of defendant immediately before and at the time of the fatal encounter, time being a material element, and it being sought by said testimony to explain the entire transaction and the conduct of the parties immediately before and at the time of the fatal encounter."

*Messrs. Jaynes & Shelor* and *Stribling & Herndon,* for appellant. *Mr. Herndon* cites: *As to exception I.:* 2 Bish. Cr. L., 3 ed., 613, *et seq.;* 21 Ency., 133, 172, 201; 50 S. C., 423; Cr. Code, 108, 120; 2 Rich. L., 182; 6 Ency., 282; 19 Ency., 623; 54 S. C., 241; 39 S. C., 109; 68 S. C., 304. *As to exception III.:* 33 S. C., 125; 25 Ency., 273, n. 6; 158 U. S., 550; Desty. Crim. L., sec. 31; 57 Ind., 80; 29 Ohio St., 186; 52 Miss., 23; 25 Ency., 275; 29 S. C., 201; 40 S. C., 349; 50 S. C., 405; 52 S. C., 452. *As to exception IV.:* 13 S. C., 466; Cr. Code, 108; 12 Rich. L., 430; 22 Ark., 354; 5 Ga., 48, 85.

*Solicitor J. E. Boggs* and Assistant Attorney General, contra. The latter cites: *As to exceptions I. and II.:* 43 S. C., 206; 1 Arch. Cr. P. & P., 8 ed., 746; 4 Bl. Com., 198, 199, 200; 1 East P. C., 215; 12 Fla., 127; 7 N. Y., 385; 34 S. C., 16. *As to exception III.:* 121 Pa. St. R., 172; 162 U. S., 473; 15 S. W., 51; 90 Ga., 701; 62 Ark., 310; 9 Hous., 415.

July 22, 1905. The opinion of the Court was delivered by

MR. JUSTICE GARY. Upon the trial of the defendant for murder, the jury rendered a verdict of guilty, and he appealed upon exceptions which will be set out in the report of the case. His Honor, the presiding Judge, charged the jury as follows:

"The State charges the killing was murder; that is to

say, that it was done with malice aforethought, either expressed or implied. Now, what does that mean? (A great deal has been said and written as explanatory of malice and to illustrate malice, and men may have different conceptions of what that legal term means. After all, what is malice? It is the intentional taking of human life.) And in the investigation of this question, therefore, you can see you must perform the somewhat delicate and difficult task of trying to interpret the intention which actuated the act. (Now, Mr. Foreman and gentlemen of the jury, if you believe beyond a reasonable doubt that the defendant intentionally killed Walter Mills, that the purpose which actuated the act—that the purpose which actuated the pulling of the trigger—was, I mean to kill him because I want to kill him —if that be the purpose, and that be the motive, it makes no difference what may have been the surrounding circumstances, that is murder.")

That portion of the charge embraced within the first parenthesis is made the basis of the first exception; and that part in the second parenthesis, of the second exception.

In the case of *State* v. *Coleman,* 6 S. C., 185, the Circuit Judge charged that "all homicide is presumed to be malicious, and amounting to murder until the contrary appears from circumstances of alleviation, excuse or justification; and that it is incumbent upon the prisoner to make out such circumstances to the satisfaction of the Court and jury, unless they arise out of the evidence produced against him." In disposing of the exception assigning error in this charge, this Court said: "The authorities undoubtedly support the proposition that the law presumes malice from the mere fact of homicide. 4 Black. Com., 201; *State* v. *Toohey,* Mss. But this presumption is not applicable where the facts and circumstances attending the homicide are disclosed in evidence so as to draw a conclusion of malice or want of malice as one of fact from the evidence. Presumptions of this class are intended as substitutes in the absence of direct proofs, and are, in

their nature, indirect and constructive.  The best evidence
of the state of mind attending any act is what was said and
done by the person whose motive is sought for. * * * If
the evidence did not warrant the conclusion of malice, the
jury should have so found, uninfluenced by any presump-
tions from the naked facts of the homicide. * * * Where
the circumstances preceding and attending an act of this
character are full, as in the present case, the prisoner is
entitled to the benefit of any doubt that may arise, and
cannot be deprived of such benefit by any presumption of
guilt arising by operation of law from the naked fact of
the homicide.  A charge may be erroneous, although the
propositions of which it is composed may severally be con-
formable to recognized authority, if in its scope and bearing
in the case it was likely to lead to a misconception of the
law."

The rule is thus stated in *State* v. *Hopkins,* 15 S. C., 153,
156: "There is no doubt whatever of the isolated proposi-
tion that the law presumes malice from the mere fact of
homicide, but there are cases as made by the proof to which
the rule is inapplicable.  When all of the circumstances of
the case are fully proved there is no room for presumption.
The question becomes one of fact for the jury, under the
general principle that he who affirms must prove, and that
every man is presumed innocent until the contrary appears.
We cannot distinguish this case from that of *State* v. *Cole-
man,* 6 S. C., 185."

These cases are cited with approval in *State* v. *Ariel,* 38
S. C., 221, 16 S. E., 779.  It will thus be seen that the charge
was inapplicable to the facts of the case under consideration
—the witnesses having testified as to the facts and circum-
stances surrounding the homicide.

It might be that the Court would regard the charge as
merely illustrative of malice, and that the error was
corrected in the subsequent charge as to the different degrees
of homicide (under the cases of *State* v. *Murrell,* 33

S. C., 83, 11 S. E., 682, and *State* v. *McDaniel,* 68
S. C., 304, 47 S. E., 384), but for the fact that the
principle was emphasized and made applicable to the facts
in this case in the other portion of said charge. The first
exception is sustained.

The principle announced in that part of the charge set
out in the second exception was intended to have direct
application to the facts of the case under consideration. The
defendant may have intended to kill the deceased
"because he wanted to kill him," and yet it would
not be murder if he took his life under sudden heat
and passion and upon a sufficient legal provocation. The
only manner in which the jury could determine the intention
of the defendant in committing the homicide was by taking
into consideration the facts attending the killing. When,
therefore, the presiding Judge said to the jury that "it
makes no difference what may have been the surrounding
circumstances, that is murder," they were bound to find the
defendant guilty of that crime if they were satisfied that
the defendant "meant to kill the deceased because he wanted
to kill him." It is true the presiding Judge afterwards
charged the law applicable to manslaughter, but the charge
as to murder was just as explicit. The jury had no greater
right to disregard the charge as to murder than that relative
to manslaughter, and it is impossible to tell which may have
influenced them in rendering their verdict. This exception
is sustained.

Third exception: Immediately after the language in the
exception modifying the request, the presiding Judge also
charged as follows: "And I charge you, where the public
has used a road twenty years or more, adversely
through the premises of another person, that the
public would acquire a right of way along that road,
and one traveling along that road could not be considered
a trespasser to adjoining property-owners; or if a man
traveling through your premises in a path has the rights
of a licensee, you would not have the right to treat him as

a trespasser. I charge you that subject to that explanation I have given you and what I have said in my general charge." There was testimony tending to show that at the time of the difficulty the defendant was on his own premises, and the deceased on a road used by the public, where he was killed.

The question is, whether there was error in the charge that there might be circumstances which would require a defendant to avail himself of every means of escape, to avoid taking human life on his own premises. As applied to the facts of this case, the question is, whether the defendant may not have been bound to retreat before killing the deceased, if the defendant was on his own premises and the deceased on the public road at the time of the fatal difficulty. Some Courts have held that one assaulted in a public street is not bound to retreat before taking measures to defend himself, because he is where he has a lawful right to be. *State* v. *Bartlett,* 59 L. R. A. (Mo.), 756. But this doctrine is not based upon sound principles, and it never has been recognized in this State. If the defendant was attacked while on his own premises by the deceased, who was at that time on the public highway, or where he had a right to be, then the defendant was bound to retreat before taking the life of his adversary, if there was a probability of his being able to escape, without losing his life or suffering grievous bodily harm. The reason is, that under such circumstances he would not have had the right to eject his adversary from the place where he had a right to be. The presiding Judge recognized this distinction, and his modification of the request was free from error.

The fourth exception arose during the examination of John Hoops, a witness for the defendant, as follows: "Q. What did you tell him about going over there? A. I didn't say anything then. I told him to let's go by Joe Seaborn's wheat, that it was looking mighty fine. And we walked around down there and back to the bridge, and when we got to the bridge I said, 'Go home with

me,' and he said, 'No, I am going home.  I told Walter I would go and look at his cow,' and I turned to him and said, 'Earle—'  Objected to by Mr. Boggs.  I don't think that has anything to do with the case.  It is a conversation he had there, and it is not a part of the *res gestae*.  By the Court: I don't think it is competent, Mr. Jaynes, for the witness to detail any conversation.  By Mr. Jaynes: I think it is competent for him to prove substantive facts, what he did, and what occurred after seeing Walter Mills, and his manner.  I think it would be competent for him to say he warned Mr. Rochester not to go over there.  By Mr. Boggs: I don't think it is competent.  It is hearsay.  By the Court: I don't think it is competent.  Mr. Jaynes excepts."

It thus appears that the witness was not allowed to testify, and the Court does not know what would have been his testimony.  When objection cannot be urged against a question intended to elicit incompetent testimony, the Court cannot know whether it is admissible until it hears the testimony.  If it is incompetent it can then be ruled out.  It seems, from the argument of counsel, when objection was made, that the object of the testimony was to warn the defendant that it would be dangerous for him to go to the home of the deceased.  Such testimony was calculated to influence the conduct of the defendant, and make him more apprehensive, and would be competent.  *State* v. *Smith,* 12 Rich., 430; *State* v. *Thrailkill,* 71 S. C., 136; *State* v. *Dean,* 72 S. C., 74.

Fifth exception: It does not appear from the testimony that the witness told the defendant why she wanted him to work on the upper side of the place.  The testimony was, therefore, immaterial; and the refusal to allow the witness to aswer the question propounded was not reversible error.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.