## STATE v. WILLIAMS.

1. EVIDENCE—WARRANT.—Admission of a sheet of paper containing a warrant, an affidavit and appointment of constable properly treated as proof of every thing on it, but if there was any doubt as to the *swearing* to the affidavit it was cured by evidence of magistrate, and statement of the trial Judge as to signing the affidavit could only mean swearing to a written statement.

2. WARRANT.—Under conditions here trial Judge was correct in treating the warrant as valid.

3. CHARGE—MURDER.—Evidence here was sufficient to warrant instruction upon aiding and abetting murder, and it was not necessary to charge the reverse of that doctrine.

4. REQUEST may be sent up by State after argument within discretion of trial Judge, but application may be made for further argument on such request.

5. CHARGE.—Failure of Judge to instruct jury to try case solely on the evidence cannot under the charge here be construed to have left jury under the impression that they could consider public opinion.

6. ARREST—TRESPASSER.—If prosecutor were present while constable was making arrest but did not assist in it and only went to his aid when he considered the officer in danger, he was not a trespasser until ordered off premises by owner.

7. REPLY.—Admission of LEADING QUESTIONS and cumulative evidence in reply is within discretion of trial Judge, and if there is any prejudice to defendant he should ask to put up evidence in surrebuttal.

8. EXCEPTION alleging error in admission of evidence based on objection not appearing in record will not be considered

9. SELF-DEFENSE.—Instruction as to self-defense *held* to be a correct statement of the law applicable to that plea.

10. INDICTMENT.—Where an indictment is drawn against two, and Judge and Solicitor inform jury that only one is on trial, indicating which, there can be no doubt as to which one the verdict should be referred.

11. CONTINUANCE.—Refusal of motion for continuance because of absence of a witness, State agreeing to admit his evidence, and because of public sentiment against defendant under facts here sustained.

12. JURY.—That one juror accidentally got separated from his fellows, while going to dinner, for a few minutes, and that others went to the barber shop in charge of a constable, no one having spoken to them about the case, are mere irregularities, which will not invalidate a verdict.

Before WATTS, J., Aiken, Winter Term, 1906.  Affirmed.

Indictment against Fred Dunbar and Jim Williams for the murder of E. H. Fisher. James Williams was tried alone and convicted, and appeals from sentence.

*Messrs. H. W. Rice* and *Sawyer & Owens,* for appellant.

*Mr. Rice* cites: *No magistrate has authority to issue warrant except on oath made to the facts:* Con. 1895, art. I., sec. 16; Crim. Code, sec. 35; 9 S. C., 309; 51 S. C., 54. *State* v. *Harley,* 2 Strob. *What is an affidavit?* 39 S. C., 409; 45 S. C., 69; 1 Cyc., vol. 4. *Legality of the warrant was a material question:* Bishop on Crim. Proc., sec. 191. *It was for the jury to say if the warrant had been issued upon a sworn statement:* 53 S. C., 367; 11 Ency. P. & P., 145-6. *Judge should intimate no opinion on the facts:* 28 S. C., 4; 7 Nev., 148. *As to charge on conspiracy:* 36 S. C., 533. *State* v. *Long,* 66 S. C.

*Messrs. Sawyer & Owens* cite: *Simply signing a paper purporting to be an affidavit will not make it such:* 22 Ency., 682; 1 Ency. P. & P., 324. *But magistrate must administer the oath:* 30 Ency., 87; 51 S. C., 54. *Offering warrant in evidence without mentioning the affidavit does not put the affidavit in:* 59 Vt., 67; I. Wig. on Ev., 119, secs. 802-806; I. Whar. on Ev., 604. *Court is not bound by report of stenographer as to objections to evidence:* 35 S. C., 537. *This Court will consider objections not covered by exceptions in favor of life:* 27 S. C., 614; 12 S. C., 89; 13 S. C., 455; 14 S. C., 619. *This Court will look for errors:* 20 S. C., 581; 27 S. C., 599; 13 S. C., 437.

*Solicitor James E. Davis* and *Messrs. Hendersons,* contra: The latter cite: *Remarks of the Judge made in the progress of a cause cannot be considered error unless he abuse his discretion: State* v. *Thrailkill,* 72 S. C. *Objection to evidence on which exception is based must appear in the record:* 75 S. C., 74. *Charge as to self-defense conforms*

*to the doctrine as laid down in State* v. *McGreer,* 13 S. C.
*Affidavits of jurors as to how they arrived at their verdict
cannot be considered:* 9 Rich. L., 112. *Setting aside a verdict is within discretion of trial Judge:* 75 S. C., 177. *What
is a matter of discretion:* 2 Rich., 123; 2 Strob., 173. *Verdict is only set aside for corrupt act or highly improper influence:* 38 S. C., 348; 60 S. C., 77; 3 New J., *State* v.
*Cucuel.*

February 15, 1907. The opinion of the Court was delivered by:

MR. JUSTICE WOODS. The defendant, James Williams,
was convicted at the winter term of the Court of General
Sessions for Aiken County of the murder of E. H. Fisher.
Fred Dunbar, who was jointly charged in the same indictment, being at the time a fugitive from justice, was not put
on trial. Williams appeals to this Court, charging error in
the refusal of the motion for continuance, in the admission
of evidence, in the charge to the jury, and in the refusal to
order a new trial. The alleged excited state of the public
mind at the time of the trial has emphasized the duty, which
always presses on this Court, to seek for any error that may
have been prejudicial to a defendant when the issue is life
or death. While only a very few of the thirty-two grounds
of appeal have been argued by the zealous counsel for the
appellant, we shall endeavor to consider all of the alleged
errors, without referring specifically to the exceptions.

The issues will be understood from the following brief
statement of the circumstances of the homicide: At the
instance of Fisher, the deceased, J. H. Eidson, magistrate,
issued a warrant for the arrest of Barney Dunbar on the
charge of stealing a mule, the property of one, Paul Frazier, on which property Fisher held a mortgage. The magistrate, at the request of Fisher, by special appointment
deputized A. M. Black to execute the warrant. Black, accompanied by Fisher, went in the night time to the house of
Barney Dunbar for the purpose of making the arrest. On

the first visit he failed to find him. On returning to the
house later in the night, Black entered and arrested Barney
Dunbar, who submitted without resistance. Just as the
arrest was made, or immediately thereafter, Fisher entered
and was mortally wounded by a shot or shots fired by
some person or persons from the other room of the house.
The State offered evidence in support of its contention,
that Fisher was not present for the purpose of attempting
to aid in making the arrest, but was with the officer merely
to identify Barney Dunbar, and went into the house only
to aid the officer when he supposed him to be in peril,
and that he was shot by defendant and Fred Dunbar or
some other person without legal provocation. For the
defense, testimony was offered to the effect that Williams
was not present when the shooting occurred, and had noth-
ing whatever to do with it. On the part of the defendant
it was also contended, that there was no legal warrant for
the arrest of Barney Dunbar, that Black and Fisher had
invaded his dwelling house as trespassers; and further, that
even if the warrant was legal, Fisher was killed in the
house of the person whose arrest it required, while attempt-
ing to serve the warrant, in violation of sec. 35 of the Crim-
inal Code, which provides, "No magistrate shall deputize
the person swearing out a warrant in any case to serve the
same."

As we understand, counsel for appellant rely mainly on
alleged errors of the Circuit Judge respecting the alleged
invalidity of the warrant.

The magistrate, Eidson, testified without contradiction,
that the oath of Fisher to the affidavit on which the warrant
was issued was made before him, the warrant itself issued
and the special constable appointed by him before
the arrest of Barney Dunbar. The affidavit, the
warrant, and the appointment were all on one sheet
of paper. When the paper was offered and received in
evidence as "the warrant," it was properly considered by the

Circuit Court that the whole paper with all it contained was meant and understood to be in evidence. If the warrant, affidavit, and appointment had not been properly proved when they were introduced, the defect in the proof was afterwards fully supplied by the evidence of the magistrate.

The Circuit Judge charged as to the warrant and arrest as follows: "I charge you, as matter of law, that if you believe the warrant which has been introduced in evidence here was issued by the magistrate and that he deputized constable Black to execute it, and the affidavit was signed by Mr. Fisher, I charge you that was a legal warrant, and it charged Barney Dunbar and Chris Lowe with grand larceny." The point is made that signing the affidavit was not equivalent to swearing to it, as the law contemplates. The objection to the language of the charge is hypercritical. It is true, signing is not the equivalent of swearing, but the Court said the "affidavit" must be signed and the word, "affidavit," means a written statement sworn to. In view of the fact, that the magistrate testified Fisher did take the oath in this case, and that there is no proof to the contrary, if the defendant wished to have the distinction between swearing and signing the affidavit laid before the jury, he should have called the matter to the attention of the Court. For a like reason, the objection cannot avail that in another part of the charge the Circuit Judge said, "if this warrant was issued by the magistrate and *signed* by Mr. Fisher, and the magistrate deputized Mr. Black to execute it, then Black had a right to arrest the parties charged with the commission of this offense, larceny of live stock, on Sunday." The jury could not fail to understand signing of the affidavit was meant.

It is insisted the Circuit Judge charged on the facts to the prejudice of the defendant in saying to the jury, "I charge you that as a matter of law that whenever a warrant is issued, and it is a valid warrant, and this is a valid warrant, if it was issued, then it is the duty of the party charged

with the commission of any offense in the warrant to submit to the officers of the law." Just before using these words, the Circuit Judge had, in the most explicit language, left it to the jury to say whether the requirements of law necessary to make the warrant of arrest valid had been complied with. It seems hardly reasonable to suppose the jury would have thought he meant, in the next breath, to take away from them the consideration of that question. But assuming that the language of the Circuit Judge is correctly reported and that the jury might have drawn such an inference, it does not follow there was reversible error; for, as we have already said, the affidavit of the prosecutor, the issuance of the warrant, and the appointment of the deputy, had been proved by the best possible evidence—the sworn statement of the magistrate who issued it—and there was not a scintilla of evidence to even cast suspicion on it. Under these conditions, it surely cannot be reversible error for the Circuit Judge in his charge to treat the warrant as valid.

The defendant further submits the Circuit Judge was in error in charging, if Fisher was killed by Fred Dunbar under such circumstances as would make the killing murder, and the defendant Williams was "aiding, abetting, assisting, and encouraging him in perpetrating the crime, then the act of one would be the act of the other." The objection that there was no foundation in the evidence for this charge cannot be sustained. There was evidence, that Fred Dunbar and the defendant were both in the room from which the fatal shooting was done, and that two men fled from the room immediately thereafter. Barney Dunbar swore his brother, Fred Dunbar, was there and that the defendant Williams was not; while Black, the constable, testified that he saw the defendant there and saw him shoot. In view of this evidence, it was manifestly proper to submit to the jury, whether the defendant was present aiding and abetting Fred Dunbar in the

killing.    The omission to charge that if Williams was present and did not aid or abet the person who did the killing and did not himself do it, he would not be guilty, cannot be assigned as error, because the proposition seems too obvious to require an express statement of it.    If the defendant thought such special instruction essential, there should have been a request for it to be given. Allowing a request to charge to be submitted by the State after the argument had closed, was in the discretion of the trial Judge.    No application was made for leave to make further argument on behalf of defendant after the request was submitted.

The point that the Circuit Judge failed to instruct the jury that their verdict should be based solely on the evidence taken at the trial is not well taken, for the jury could not have failed to understand from the charge, that the Judge was directing their attention to the law applicable to the conclusion that they might draw from the evidence offered, without respect to public opinion.    If this was not made sufficiently plain, a definite request to charge on the subject should have been made.

As we have already seen, there was some evidence from which the jury might have inferred Fisher was not present for the purpose of assisting in the arrest, but entered the house after the arrest and when he supposed the officer to be in danger.    Whether this evidence was credible was for the jury to say.    To this testimony the following instruction was applicable, and clearly the exception that it was irrelevant is not well founded: "If you believed the magistrate signed this warrant and he deputized Mr. Black to execute it, then I charge you that Mr. Black had the right to make the arrest under this warrant of the parties charged in the warrant, and if Mr. Fisher went along with him and was taking no part in the arrest, but was there as a spectator or anything of that sort, was taking no part or anything of that sort, that would not make him an officer.    I charge you further, as matter of

law, that if an officer goes out to arrest another, and even the prosecutor in the case goes along with him, as long as he behaves himself and takes no part in it, he is not a trespasser until he is ordered off of the man's premises he goes on. If he is ordered off, then it is his duty to go, and if he does not go off, then the owner of the premises has the right to use whatever amount of force is necessary to put him off. He has no right to use any unnecessary force, however."

The objection to the charge, that the Circuit Judge erred in stressing the issue whether Black was a constable in the discharge of his duty, and whether he was resisted and shot at when Fisher was hit, is not well taken, for the evidence shows conclusively that whoever shot Fisher, fired because of his entry into Barney Dunbar's house and the attempt to arrest him. Indeed, the defendant himself preferred a request to charge as to the rights of a man and his guests against an officer who comes into his house and acts unlawfully.

The exceptions as to leading questions and the admission of cumulative evidence in reply cannot avail. Such matters are in the discretion of the Circuit Judge. If the defendant had any cause to complain as to admission of evidence in reply, he should have asked to be allowed to put up further testimony on his own behalf.

The officer, Black, before objection could be made, testified that when he first went to Barney Dunbar's and failed to find him he told his wife, in order to mislead her, he would be back to see Barney some time in the course of the week. As soon as objection was made the Circuit Judge instructed the jury to disregard what the witness had said, and hence we can see no basis for the exceptions on this point.

There are several exceptions alleging error in the admission of testimony as to conversations not in the presence of the defendant, but the record does not disclose any objection

made to such conversations during the trial. The presiding Judge took care, whenever objection was made, to inquire if any inducements were offered or threats made, before admitting conversations between the defendant and witnesses for the State, and there was not the slightest ground for charging abuse of discretion on this point.

There was no error in excluding a conversation between the defendant and the witness, Andrew Dunbar, as such conversation could have been relevant only as a declaration of the defendant in his own favor, and such a declaration is incompetent.

It is too manifest for discussion that the following statement made in the charge as to self-defense was in accord with the well established law in this State: "The law of self-defense is this: Wherever a party is without fault in bringing on the difficulty and is attacked or assaulted by another, then the law gives him the right to take care of himself, he being without fault in bringing on the difficulty, he can use whatever amount of force is necessary for his complete self-protection. And where a man is without fault in bringing on the difficulty and is assaulted or attacked by another under such circumstances as in the opinion of the jury who try the case would justify or warrant a man of ordinary reason and firmness in believing he was in actual danger of loss of life or of sustaining serious bodily harm, from which he has no probable means of escape, by retreat or otherwise, then under circumstances of that sort he has a right to defend himself, even to the extent of taking the life of his assailant."

The presiding Judge, in the beginning of the charge, instructed the jury that while Fred Dunbar was also charged in the indictment, the defendant alone was on trial, and the same announcement was made by the solicitor at the beginning of the trial. It is impossible, therefore, to doubt that the verdict of "guilty" must be referred to the defendant.

The jury received instruction from the presiding Judge in the plainest terms, that, in finding a verdict, they could recommend to mercy, and that the effect of such a recommendation would be to make the sentence life imprisonment, and there is, therefore, no ground for the exception on this point.

We can discover no ground for the charge of abuse of discretion in refusing the motion for continuance or in refusing motion for a new trial, nor are we able to find anything in the very fair charge indicating to the jury any opinion of the presiding Judge as to the merits of the case.

The conclusion of the presiding Judge that the excitement was not such as to prevent a fair trial is binding on this Court in the absence of conclusive evidence to the contrary, and no evidence whatever to the contrary appears in the record. The following remarks of the Circuit Judge as to the absence of a material witness fully vindicate his refusal to grant a continuance on that ground: "As to the absence of a material witness: the affidavit of the doctor shows this man has been sick two months and an operation has been performed on him. He nowhere says that the man will be well enough to come here at the next Court. That being the case, I don't think it is a case I ought to continue on the ground of absence of a material witness, provided the State will admit what he would swear to if he were present, because there is nothing to show that he will be here next Court."

Upon the charge of misconduct of the jury being brought to the attention of the Circuit Judge as a ground for a new trial, he instituted a thorough investigation of the matter, and we agree with him in the conclusion, that nothing was developed which affected the integrity of the verdict. The separation of the juror, Burton, for a few minutes from the jury which was in charge of the constables was unintentional and entirely accidental. While the conduct of the constables in allowing jurors to go under their surveillance to a barber shop is not to be approved, yet this took place, as we understand, before the jury retired to con-

sider the verdict, and the evidence was that no one comunicated with the jurors about the case on these occasions. We do not think under the views heretofore expressed by this Court this apparently innocent irregularity should be allowed to destroy the verdict. *State* v. *Rowell,* 75 S. C., 494; *McGill Bros.* v. *S. A. L. Ry.,* 75 S. C., 177.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and the cause be remanded to the Circuit Court in order that a new day may be assigned for the execution of the sentence heretofore imposed.