### 7812

### STATE v. CROSBY.

1. Continuance—Appeal.—Motions for continuance are addressed to the discretion of the trial Judge and the refusal is not appealable unless there is an abuse of discretion.

2. Constitutional Law—Charge.—Comment on the truthfulness of an absent witness, whose affidavit was used in motion for continuance before jury was empanelled, is not in violation of the constitutional inhibition against charging with respect to matters of fact.
Mr. Justice Hydrick *thinks the remarks may have been prejudicial.*

3. Evidence.—Exclusion of evidence is not reversible error when the witness is afterwards permitted to testify to similar facts.

4. Extent of cross-examination is limited by the discretion of the trial Judge.

5. Self-Defense.—Charge complained of is a correct statement in a general way of the law of self-defense. Any view of the law applicable to a special state of facts should be requested.
Mr. Justice Hydrick *dissents.*

6. Charge—Malice—Provocation.—Definitions of malice and of provocation by words when considerd with the whole charge held not error.
Mr. Justice Hydrick *dissents as to definition of malice.*

7. Drunkenness.—Instruction as to the effect of drunkenness as a defense in a criminal case by designating one condition as "crazy drunk" does not entitle defendant to new trial.

8. SELF-DEFENSE.—Instruction that one of the pleas of self-defense must be made out fully is not erroneous when considered with the entire charge.

9. DRUNKENNESS—APPEAL.—Whether an instruction as to the effect of drunkenness as a defense for crime is correct or not is not material where the evidence shows the defendant was not in that condition.

Before WILSON, J., Anderson, January term, 1909. Affirmed.

Indictment against John Crosby for murder of Ed Acker. Defendant appeals on the following exceptions:

1. "That his Honor erred in refusing the motion for continuance upon the grounds upon which it is based, (a) since defendant made a showing within the requirements of the rule of Court, it was the first term after the homicide, the witness, Bailey, was a material witness, a white man who had been duly bound over, and under such circumstances it was beyond the discretion of the trial Judge to refuse the continuance; (b) and since it amounted to a denial of defendant's constitutional right (Const. '95, Art. I, sec. 18) to have compulsory process for obtaining the personal attendance of his witnesses to grant such process and immediately to proceed with the trial without opportunity for a return thereon.

2. "That his Honor erred in commenting upon the truthfulness or credibility of the witness, A. M. Bailey, in the hearing of the jurors, in such a way as to give them his opinion of the weight of the testimony of said witness, this comment being in direct violation of the spirit of the constitutional provision against Judges charging the jury with respect to matters of fact—or in violation of both the letter and the spirit of Art. V, sec. 26, Constitution of 1895.

3. "That his Honor erred in excluding testimony of John Crosby, the defendant, as to Ed Acker's general boast made to him of his immoral dealings with women, this being a circumstance to make him more suspicious of Acker and

one among other circumstances bearing on the question of provocation, upon the honesty of his belief as to adulterous intention or conduct, and tending to bring about sudden heat and passion in the defendant and to excite his jealousy. And his Honor erred in refusing a motion for a new trial upon this ground.

4. "That his Honor erred in refusing to permit defendant's counsel to cross-examine the witness, S. N. Pearman, in regard to particular acts of dishonesty and untruthfulness upon the part of the deceased, Ed Acker; (1) Because the witness was adverse and hostile, and it is permissible to cross-examine even one's own witness when he appears to be hostile; (2) Because it was permissible to ask the witness any question that could have been asked the said Acker if he had been upon the stand, since he was speaking through the lips of the witness, Pearman; (3) Witness having testified his general reputation was good, it was competent to ask him about specific acts to test his bias or accuracy. And his Honor erred in refusing the motion for a new trial on this ground.

5. "That his Honor erred in his *charge upon self-defense.* His Honor charged as follows: 'What is self-defense? It is a right that our law recognizes, and I hope always will recognize. The very term explains itself—defending yourself, and that means not only your person, but your wife and children, your parents, your kin in the right. The law says that you have a right to defend them. Here are the elements necessary to make out self-defense: first, the party pleading self-defense must be without fault in bringing on the difficulty. Now, that is good, hard, common sense. A man cannot go by words or acts bring on the difficulty, and when he gets into a close place and fears he is going to be killed or receive serious bodily harm, slay his fellowman and then plead self-defense. He must be without fault in bringing on the difficulty. That is the first step. A man cannot provoke a difficulty, bring about the condition, and

kill his fellow-man and say he was without fault in bringing
on the difficulty. The next step, that he himself, in the
opinion of the jury, must have honestly believed that he
was in danger of losing his life, or in danger of receiving
serious bodily harm; and third, the jury must come to the
conclusion from the evidence, that a person of ordinary
firmness and reason would have been warranted in coming
to that conclusion under the circumstances. That is the
standard, not what any unusual brave, bold, daring per-
son would do, nor what a timid, scary, cowardly person
would do on the other hand, but what a person of ordinary
firmness, reason and prudence, in the opinion of the jury,
would have done under the circumstances; fourth and last,
and there must be no reasonably safe way for the person
pleading self-defense to escape. The law says if a man can
do so with reasonable safety to himself, he must do it and
not take the life of his fellow-man, if he can with reasonable
safety to himself avoid it. The law does not mean by that,
that in every case a man must turn his back and run. But
the law says if he can with reasonable safety to himself
avoid taking human life, he must do it.' The first error
complained of here is this: Under this rule a man attacked
in his own yard or domicile (a) may be free from fault in
bringing on the difficulty, (b) may honestly believe that he
is in danger of death or serious bodily harm, (c) may be
justified under the law in so believing—and yet he must run
or retreat if there is a reasonably safe way of escaping—
whereas, under such circumstances a man need not retreat
or run but may stand his ground. Under the conceded fact
that defendant was at his own home this charge is incorrect
as a matter of law and also wholly inapplicable to this case
and strongly tended therefore to confuse the jury. The
second error in the above is this: The charge denies one the
right to stand his ground where he has the actual ability to
retreat with reasonable safety to himself, when all that the
law requires even where a man is not in his own yard or

in his own home is that it must actually appear to him that he cannot retreat with reasonable safety to himself.

6. "That his Honor erred in charging the jury as an alternative definition of malice, the following: 'Another definition is, that it is the wilful and intentional doing of a wrongful act, and the person knowing his act to be wrong, knowing it to be against the law, and wilfully does it, the law says when a man does that, he does it maliciously,' the error consisting in this (a) that as a definition of malice this may be applicable to the law of torts, but it is not a definition of malice in the law of murder, and (b) although an act may be done wilfully or intentionally, and the person doing it knows it to be wrong and against the law, it is not necessarily malicious as that term is used in the law of murder, and a killing thus wilfully done could be manslaughter, and (c) it is error to thus define malice without also stating that such act must be without justification, extenuation or excuse, this being an essential part of the definition of malice in this connection.

7. "Because his Honor erred in charging the jury as follows: 'Malice is defined to be a term of art meaning wickedness. When you say a man does a thing with a malicious heart, it means a heart devoid of social duty and fatally bent upon mischief.' The error consists in charging that malice means wickedness, without the necessary qualification 'excluding a just cause or excuse.'

8. "That his Honor erred in charging, as he did upon the issue as to provocation by mere words, when upon the testimony, there was no such issue in the case, said charge tending to mislead and confuse the jury—especially in the absence of a modification to the effect that such is not the rule if the mere words were sufficient to lead a man of ordinary reason and firmness to believe that they charged immoral relations with defendant's wife or led him to believe that deceased had just had, or was about to have,

such relations. And that his Honor erred in refusing a new trial upon this ground.

9. "That his Honor erred in charging upon the issue as to whether defendant committed the alleged crime while 'crazy drunk,' when, under the testimony, there was no such issue in the case, and said charge tending to mislead and confuse the jury. And that his Honor erred in refusing a new trial upon this ground.

10. "That his Honor erred in charging as follows: 'One of the pleas is self-defense; that has got to be made out *fully,* because it is for the jury to say whether it is made out in this case'—the error being that in so charging his Honor required this plea to conform to a higher and different standard from that required by law, to wit: that it be proved by the preponderance of the evidence. And that his Honor erred in refusing a new trial upon this ground.

11. "That his Honor erred in charging the jury as follows: 'Now, drunkenness. In law drunkenness is no excuse for crime. A person may go out upon the street today and get beastly drunk, and the morning after he may not realize what he has done. If he is just simply drunk from effects of whiskey, the law says that is no excuse. But where a person drinks excessively and has become diseased, if he drinks so much that he has become diseased, and if the person is insane on account of being so diseased, then the law excuses him and says he is not responsible for his acts. I don't mean just when a person is simply crazy drunk. I don't mean that—understand that;' and also in charging in connection with defendant's fourth request, in connection with the meaning of the words 'temporarily insane,' the following: 'I will try to explain to you what I mean by it. That means that he was insane, not simply what we call crazy drunk, because I suppose you have seen men very likely in your life so drunk they didn't know anything, and could not tell you the next day what they did today. The law does not mean that man; that man would be responsible

for his acts.' The error consisting in this, that if a man committed homicide while 'crazy drunk,' so drunk that he didn't know anything, and could not tell what he had done, when there is no evidence that he became drunk for the purpose of committing homicide, and the evidence on the contrary negatived that idea—in such case there cannot exist the specific evil intent essential to malice, there can be no malice in the legal sense in which the term is used in the law of murder, and no premeditation or deliberation.

12. "That his Honor erred in charging as applicable to this case that the law implies malice from the use of a deadly weapon, since the facts and circumstances were in evidence and there was no room for such presumption."

*Messrs. Martin & Earle, Paget & Watkins* and *J. Ashby Sawyer,* for appellant.

*Messrs. Martin & Earle* cite: *Right of defendant to compulsory process for his witnesses:* 66 S. C. 404. *Statement of adverse opinion as to credibility of witness:* 36 S. C. 544; 60 P. R. 112; 85 S. C. 269. *Cross-examination:* Wig. on Ev., sec. 1446; 2 Bish. Cr. Prac., sec. 1209; 4 Ency. Ev. 1015. *Charge as to self-defense:* 72 S. C. 194; 33 S. C. 125; 158 U. S. 158; Whar. on Hom. 490; 79 S. C. 150; Whar. on Hom. 484-5, 118. *Charge as to malice:* 2 Rich. 179; 4 L. R. A., N. S. 394; 72 S. C. 196. *Charge as to provocation:* 50 S. C. 424; 42 L. R. A. 776; 72 S. C. 200; 11 Ency. P. & P. 207-9. *Effect of drunkenness:* 40 S. C. 347; 1 Bish. C. L., secs. 401, 416; 1 Spear. 384; 17 Ency. 406-7, 409; Whar. on Hom. 807-9; 12 Cyc. 172. *Presumption of malice:* 72 S. C. 194; 21 Ency. 138.

*Mr. Sawyer* cites: *As to remarks about the credibility of the witness:* 73 S. C. 383; 78 S. C. 505; 80 S. C. 387; 82 S. C. 326. *As to retreating from attack in his own dwelling :* 25 Ency., 273, 277; 21 S. C. 823; 85 S. C. 247.

*Solicitor P. A. Bonham,* contra, oral argument.

March 9, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. The appeal herein is, from the sentence of death, imposed upon the defendant, John Crosby, for the alleged murder of Ed Acker.

The exceptions will be set out in the report of the case.

*First Exception.* Motions for continuance are addressed to the presiding Judge, and the refusal to grant such motion is not the object of appeal, unless there was an abuse of discretion, which has not been made to appear in this case. *State* v. *Pope,* 78 S. C. 264, 58 S. E. 815.

*Second Exception.* The jury had not then been empanelled, and we fail to see wherein the remarks of the presiding Judge, in refusing the motion for continuance, were in violation of article V, section 26, of the Constitution, prohibiting Judges from charging juries, in respect to matters of fact. Furthermore, the affidavit of A. M. Bailey, which was afterwards introduced in evidence, was prejudical rather than favorable to the defendant.

*Third Exception.* After his Honor, the presiding Judge, excluded the testimony mentioned in the exception, the defendant was allowed to testify as to similar facts, without objection.

*Fourth Exception.* In the first place, we fail to see the relevancy of the testimony which the defendant's attorneys sought to elicit from the witness. And in the second place, the extent to which an attorney shall be permitted to cross-examine a witness, is limited by the presiding Judge, and his ruling in this respect is not appealable, unless there has been an abuse of discretion, which does not appear in this case.

*Fifth Exception.* This exception must be overruled, for the reason that the charge was a correct statement, in a general way, of the law of self-defense; and, if the defendant desired to avail himself of any special rights, arising out of the fact, that he was on his own premises, at the time of the homicide, he should have presented a request embodying a proposition, to that effect.

*Sixth Exception.* When the charge is considered as a whole, it will be seen that this exception cannot be sustained.

*Seventh Exception.* What has just been said disposes of this exception. Furthermore, the appellant has no cause to complain of the definition of malice, as the burden which rested upon the State, to prove malice, was made greater than the law requires.

*Eighth Exception.* In the first place, the exception is too general, but waiving such objection, it cannot be sustained when the entire charge is considered.

*Ninth Exception.* There was testimony to the effect that the defendant was drunk, and the presiding Judge charged as to the effect of drunkenness, in its different stages. Calling one stage "crazy drunk" does not entitle the defendant to a new trial.

*Tenth Exception.* When the charge is considered in its entirety, this exception cannot be sustained.

*Eleventh Exception.* This exception cannot be sustained, for the reason that, whether his Honor, the presiding Judge, was in error or not, in charging that a man's being "crazy drunk" would be no excuse for crime, defendant's own evidence showed clearly that he was not "crazy drunk," in the sense that he did not know what he was doing, as he gave, while on the stand, a full and detailed account, of what took place, at the time of the homicide.

*Twelfth Exception.* What has already been said disposes of this exception.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that Court, for the purpose of having another day assigned, for the execution of the sentence.

MR. JUSTICE HYDRICK, *dissenting.* The first and second exceptions, considered together, are not entirely without merit. The defendant had done all the law required him to do to secure the attendance of the witness, Bailey. He had him put under recognizance to appear and testify. Upon his failure to appear, the defendant's attorneys presented an affidavit, in support of their motion for continuance, which fully complied with rule 27 of the Court. Even then, it was within the discretion of the Court, considering the materiality of the testimony of the absent witness, as it appeared from the affidavit, to order the case to trial with or without requiring the solicitor to admit, as the condition of refusing the continuance, that the absent witness would testify, if present, as stated in the affidavit. But, in refusing the motion for continuance, the presiding Judge said: "If Mr. Bailey, a white man, knows anything about this case, it being a murder case, he should have been here. Where a witness, white man, with any intelligence, who claims to be an important witness in a murder case, would go off without leave of the Court, unless he had some good excuse, so far as the Court is concerned, it is very doubtful whether the Court would put much faith in what he had to say about the case. The Court rules that the case goes on to trial." The Court ordered a bench warrant to be issued for the arrest of the absent witness, and though he was not arrested in time to testify at the trial, his testimony as it appeared in the affidavit of defendant's attorneys, was admitted and allowed to go to the jury—whether as a condition of ordering the case to trial or not does not appear. But, in either case, his testimony had already been discredited by the remarks of the

presiding Judge in the presence of the jurors. It did not appear why the witness was absent. He may have had a good and sufficient excuse. The remarks of the presiding Judge, discrediting his testimony, were uncalled for and not warranted by the mere circumstance of his absence, and they may have prejudicially influenced the consideration of his testimony by the jury.

The testimony shows that the fatal encounter occurred at the defendant's home. He was, according to his testimony, at the time of firing the fatal shot, on his own piazza, within a few feet of the door of his dwelling house. According to the testimony of the State's witnesses, he was in his yard. In either view of the testimoy, he was within the curtilage of his dwelling house. According to the testimony of the State's witnesses, the defendant killed deceased without provocation. According to his testimony deceased was making an unprovoked attack upon him. We do not know whether the jury believed the testimony of the State's witnesses or that of the defendant. They may have believed that of the defendant. But, even if they did, under the charge, they may nevertheless have convicted the defendant of murder, because they believed that he could have avoided the necessity of killing the deceased by retreating into his house. But if the defendant's testimony be true, he was not bound to retreat. In this view of the evidence, the charge was erroneous and prejudicial. *State* v. *Brooks,* 79 S. C. 144, 60 S. E. 518. I do not agree to the proposition that a positive error in the charge cannot be made the ground of exception, unless a request to charge otherwise has been presented. A party has a right to presume that the Court will charge correctly the law applicable to the case as made by the testimony. If the Court failed to charge a proposition of law which might be applicable to some special phase of the testimony, a party cannot complain of such omission as reversible error, in the absence of a request to so charge. But when the Court

charges a correct proposition of law, as applicable to the facts of the case, when it is not, or when the Court charges incorrectly the law applicable to the facts of the case, and when it is made to appear that the error was or may have been prejudicial, there is no reason why the party prejudiced thereby should not be allowed to take advantage of such error on appeal, without having preferred any request to charge otherwise. The difference is in errors of omission and errors of commission. Applying the principle: If the Court had said nothing about the duty of a defendant who pleads self-defense to retreat, the defendant could not have complained of error in failing to charge that he was not bound to retreat, when attacked upon his own premises, in the absence of a request to so charge. On the other hand, when the Court charged that the defendant was bound to retreat, the charge was erroneous when applied to one phase of the evidence. The fifth exception should, therefore, be sustained.

There was also prejudicial error in the definition of malice. The only difference between murder and manslaughter lies in the presence or absence of malice in the heart of the slayer. If the killing was done with malice, it was murder. If it was done unlawfully, but without malice, it was only manslaughter. It was, therefore, of the utmost importance that the jury should have been correctly informed what malice in law is. Otherwise, they could have had no adequate conception of the difference between murder and manslaughter. It seems clear to me that the definitions of malice given in the charge, which is correctly quoted in the sixth and seventh exceptions, were erroneous and misleading in the particulars pointed out in these exceptions. In *State* v. *Rochester,* 72 S. C. 194, 51 S. E. 685, this Court held that a definition of malice similar to that contained in the sixth exception was erroneous, and reversed the judgment, notwithstanding the trial Judge afterwards correctly charged the

law of manslaughter; because, said this Court, "the charge as to murder was just as explicit. The jury had no greater right to disregard the charge as to murder than that relative to manslaughter, and it is impossible to tell which may have influenced them in rendering their verdict." So, here, it is impossible to tell which definition of malice the jury accepted and based their verdict on. That contained in the sixth exception, being less metaphysical and more easily understood than the more ancient definition in the seventh exception, is the more likely to have been accepted and applied by the jury, though the other is not accurate, as pointed out in the exception. Under the erroneous definition of malice pointed out in the sixth exception, the jury may have convicted the defendant of murder, when, if malice had been correctly defined, they would have convicted him of manslaughter. The error was not corrected in any subsequent part of the charge. This exception should be sustained.