14512

STATE v. McDONALD

(192 S. E., 365)

June, 1936.

292

*Messrs. Thurman & Buzhardt* and *McDonald, Macaulay & McDonald,* for appellant, cite:

*Mr. W. G. Finley, Solicitor,* for the State, cites:

July 14, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The defendant, Furman McDonald, was convicted of the murder of H. B. Thompson, Jr., at the June term of the Court of General Sessions, 1936, in Fairfield County, and sentenced by the presiding Judge to death by electrocution.

McDonald is a white man, and was 43 years of age at the time of his trial. He is married, and is the father of four children. The deceased, H. B. Thompson, Jr., was a lad of thirteen years, who lived with his parents, Mr. and Mrs. H. B. Thompson, in the Greenbriar section of Fairfield County, at Mossydale, which is about a quarter of a mile from the home of McDonald, in the same county.

On the night of September 29, 1935, between 12 and 1 o'clock, McDonald left his home in his automobile and

drove to the home of the Thompsons. He stopped his car directly in front of the house, with the headlights shining on the front dor. He then proceeded to break into the house by bursting open this door. Finding the elder Thompson in bed, he clubbed him into unconsciousness with a shotgun. Mrs. Thompson, who was awake when the defendant entered the house, and who occupied the same bed with her husband, succeeded in grasping and holding the gun so as to stop any further attack upon her husband. Aroused by the violent uproar, the deceased, who occupied an adjoining room, came to the connecting door, screaming and crying, and asked what the disturbance was about. Whereupon, McDonald, making the statement, "You are the one that I want," shot at him. The deceased begged the defendant not to shoot him again, but the defendant shoved the boy from him, and shot him the second time, inflicting the mortal wound. Reloading the gun, McDonald made the threat that he was going to shoot Mr. Thompson, but he desisted when Mrs. Thompson again struggled with him for its possession. He then left the house, but before leaving he struck her several times with the weapon. The deceased died in the office of Dr. G. C. Buchanan in the town of Winnsboro within a few hours after he was shot.

Before leaving his home that night, McDonald severely beat his little ten-year-old girl, in the effort to extort from her the statement that the deceased had cut her. In order to make him discontinue the punishment, the little girl finally made the statement that H. B. Thompson, Jr., had cut her on the stomach with a knife. This assertion is admittedly untrue, but it was immediately following it that the defendant went to the Thompson home. There is testimony in the record that the defendant continually talked about the Thompsons, and some time prior to the homicide, made the statement that Thompson and his boy should be run out of the community; and just before leaving his home that night, he said that he intended to kill all of them. There is

also testimony tending to show that he was drinking on the night of the homicide.

This brief statement outlines the setting of the crime.

Upon his trial, which occurred about eight months thereafter, the defendant interposed the plea of insanity, and testified that he knew and remembered nothing of what had occurred on the night of the homicide. To every question relating to the crime, he answered: "I don't know." From the sentence imposed, McDonald appeals to this Court, charging error in the refusal of his motion for a continuance of the case, the refusal to stand aside certain jurors for cause, and in the refusal to order a new trial.

Upon the opening day of the Court, counsel for the appellant made and argued a motion for a continuance of the case, based upon the inability of Mr. Roger Smith, of Fairfield County, a former employer of the defendant, and of Mr. J. Frank Mattison, Probate Judge for McCormick County, to attend the trial on account of illness. The motion was denied, and the case was set for trial the next day, Tuesday, June 9th. On that day the motion was renewed, upon the same ground, and was again refused. It is argued that the motion for continuance should have been granted because these two witnesses for the defense were highly material.

It appears that the defendant was employed at a sawmill of Mr. Smith, in Fairfield County, for six or seven years immediately prior to the homicide, and it was contended by counsel that Mr. Smith was relied upon to prove the mental condition of the defendant and his alleged periods of insanity or "spells," during those years.

The defendant was a native of the County of McCormick, and several witnesses from that county attended the trial and testified as to the defendant's mental condition during the various periods that they knew him. Counsel for the appellant undertook to show, by these and other witnesses, the mental characteristics and the alleged erratic conduct

of the defendant from his earliest years, and to prove that
the defendant had exhibited symptoms of mental derange-
ment from the time he was a child until the date of the
trial.

We can discover no ground for the charge of abuse of
discretion in refusing the motion for continuance.

The following remarks of the presiding Judge as to the
absence of these two witnesses fully vindicate his refusal to
grant a continuance on that ground:

"Now, in regard to the absence of these witnesses, neither
one of those witnesses claim to be present at the time of
the occurrence—at the time this unfortunate killing oc-
curred; and their testimony would necessarily be merely
corroborative and cumulative of that of other witnesses.
Numerous other witnesses covered every possible point in
the case, prior to the killing and after the killing. And their
evidence would not have been different to that of other
witnesses along the same line.

"And that leads up to the testimony of Dr. Buchanan. He
was a witness who saw the defendant immediately after
the occurrence, and therefore was better acquainted with
the defendant's condition than the absent witnesses were;
had a better opportunity to judge the defendant than the
other witnesses. He resided in the county. He is a gentle-
man of the highest character, and above reproach in every
respect. Now, if he was not able to say this defendant was
insane, and with all the knowledge and opportunity he
had to pass on his insanity, I do not see how the jury would
be expected to say he was insane. Dr. Buchanan had no ad-
verse interest to the defendant; all of his leanings would
have been in favor of the defendant. He said he was com-
pelled to testify the truth. And the defendant, on the stand,
said he was today in sound mind."

We should add that an affidavit executed by Probate
Judge Mattison was read to the jury, and the prosecuting

attorney agreed that if Mr. Mattison were present he would testify to the statements contained in the affidavit.

In addition to the testimony of the defendant himself, thirteen witnesses, medical and lay, including the defendant's wife and his mother, were sworn on behalf of the defense, some from McCormick County and some from Fairfield County, and their testimony was directed in each instance toward establishing proof of the defendant's insanity.

The case of *State v. Williamson,* 115 S. C., 315, 105 S. E., 697, cited by the appellant, is not in point. In that case it was held that it was an abuse of discretion on the part of the presiding Judge not to grant a continuance because of the absence of the defendant's wife, where it appeared that she was present at the time of the killing, was defendant's most material witness, and could not attend the trial and testify without subjecting herself to dangerous consequences on account of her physical condition.

Applications for continuance are addressed to the sound discretion of the Court, and 'it is a well-established rule in this commonwealth, and perhaps in all American jurisdictions, that the trial Court's ruling in granting or in refusing a motion for a continuance in a criminal case will not be disturbed in the absence of a clear and conclusive showing of abuse of discretion. *State v. Crosby,* 88 S. C., 98, 70 S. E., 440; *State v. Edwards,* 86 S. C., 215, 68 S. E., 524; *State v. Franklin,* 80 S. C., 332, 60 S. E., 953; *State v. Williams,* 76 S. C., 135, 56 S. E., 783. The exceptions raising this question are overruled.

It is next contended that the examination of certain jurors upon their *voir dire* disclosed that they were "not indifferent in the case," and that the trial Court committed reversible error in not excluding them from the jury. Our attention is particularly directed to the examination of D. F. Hatchell, the seventeenth juror called in the case. This juror did not sit upon the jury which tried the

defendant. He was excluded by peremptory challenge on the part of the defense. It is contended that he should have been excluded for cause by the trial Judge upon the ground that he stated that he had formed or expressed an opinion as to the guilt or innocence of the accused, and, in effect, that it would take some evidence to remove that opinion.

The juror stated that he had formed or expressed an opinion, but explained this by saying that he just made a remark when he first heard of the case; that he was without bias or prejudice, would render a verdict in accordance with the law and the evidence, and knew of no reason why he should not give the State and the defendant a fair trial.

This question and the following question will be passed upon together.

Error is also assigned to the trial Judge because of his failure to stand aside the twenty-seventh juror, J. Ernest Stevenson. With the calling and acceptance of this juror the jury panel was completed. The defense had exhausted its challenges, but the indifference of this juror is challenged upon the same ground as is made with respect to the juror, Hatchell, namely, that he stated that he had formed or expressed an opinion in regard to the guilt or innocence of the accused. He, too, upon his *voir dire,* however, stated that he was not conscious of any bias or prejudice against the defendant, knew of no reason why he should not give the defendant a fair trial, and would follow the law and the evidence in reaching a verdict.

We think there was no abuse of discretion in the ruling of the Court that the two jurors named should be presented. These jurors stated and reiterated under oath, on examination by the Court and on examination by counsel for the defense, that in reaching a verdict they would be guided by the law and the evidence in the case. As was said in *State v. Faries,* 125 S. C., 281, 118 S. E., 620, 622:

"The weight to be attached to the juror's statements was for the Circuit Judge. The manner and bearing of the

juror, nature's stamp of character on form and countenance, are evidential exhibits for the consideration of the Circuit Judge, which may be more indicative of the juror's real attitude than his words. Those things cannot adequately be spread upon the record."

The exceptions raising these questions are overruled on the authority of the following cases: *State v. Mittle,* 120 S. C., 526, 113 S. E., 335; *State v. Milam,* 65 S. C., 321, 43 S. E., 677; *State v. Williamson,* 65 S. C., 242, 43 S. E., 671; *State v. James,* 34 S. C., 49, 12 S. E., 657; *State v. Coleman,* 20 S. C., 441; *State v. Dodson,* 16 S. C., 453.

The facts in the cases of *State v. Sanders,* 103 S. C., 216, 88 S. E., 10, and *Brown v. S. H. Kress & Co.,* 170 S. C., 178, 170 S. E., 142, are easily distinguished from the case at bar, and are not in point.

Error is assigned because the trial Judge refused to grant the defendant's motion for a new trial, based upon the ground that the solicitor was permitted or allowed by the Court in his closing argument to the jury to make certain improper and objectionable statements to the jury; and in the failure on the part of the presiding Judge to admonish the jury to disregard such statements. It is asserted that the solicitor in his closing argument said that "he would take up the suggestion of defense counsel, that the jury return a verdict of murder or not guilty, or words to that effect," when in reality the defense counsel made no such suggestion. And it is argued that the use of these words might have influenced the jury against bringing in a verdict of manslaughter or a recommendation to mercy.

As heretofore stated, the entire testimony for the defense was directed to the establishment of the defendant's plea of insanity. There is no suggestion or intimation in the whole record that the defendant relied upon any other defense. The evidence shows beyond the peradventure of a doubt that the jury could properly have rendered but one of three verdicts: (1) Murder, (2) murder with recommendation to

mercy, or (3) not guilty, on the ground of insanity. However, the trial Judge, in his instructions to the jury, not only covered the law applicable to murder, but fully charged the lesser grade of manslaughter. And he doubtless charged the jury with reference to manslaughter out of a superabundance of caution, to the end that every legal right of the defendant should be protected. The jury were also specifically charged that in the event of a verdict of guilty, it was within their province to recommend to mercy, and the legal effect of such recommendation was fully explained. The record is devoid of evidence which would have warranted a verdict of manslaughter. Nothing could be clearer, that the theory of the State and of the defense throughout the trial was that the jury under the evidence would necessarily have to render one of the three verdicts above referred to. The record amply supports the statement made by the trial Judge in passing upon this ground for a new trial. He said: "There was no offer of testimony or argument otherwise to excuse the act committed. I mean by that that counsel themselves, by any argument otherwise, agreed that if it was the act of a sane and sound man, it was a murderous act; and if not the act of a man of sound and sane mind, it was not punishable at all. And I so charged the jury, in the last proposition, if the man was insane, he would not be punishable in any degree."

The exceptions raising this issue are overruled.

Finally, it is contended that the appellant's motion for a new trial should have been granted because the solicitor is alleged to have stated in his closing argument to the jury that if the defendant were not convicted of murder, he would be sent to the State Hospital, and that the physicians there would probably return the same report as they did during the observation period last fall, and find the defendant sane; and then stated that the defendant could and would bring a *habeas corpus* proceeding and get released, and be out on society again.

The portion of the solicitor's argument to the jury above referred to was not taken down at the time the words are alleged to have been uttered, but forms a part of the appellant's third ground upon which he moved for a new trial. The solicitor while making his argument was not interrupted by appellant's counsel. Therefore, even if these remarks which are challenged were improper and objectionable, the solicitor had no opportunity of withdrawing them or making any explanation thereabout. It was developed in the oral argument before this Court that counsel for the appellant, desiring to make an objection during the solicitor's closing address to the jury with respect to the quoted remarks, went to the bench and expressed this objection to the trial Judge. Error is assigned because the trial Judge allowed the solicitor to go outside of the record, to the prejudice of the defendant.

In his brief, the solicitor states that while counsel for the appellant did not follow the proper procedure, as outlined in *State v. Smith,* 165 S. C., 215, 163 S. E., 639; *State v. Meeham,* 160 S. C., 111, 158 S. E., 151, he does not wish to take advantage of their failure to follow the correct procedure, nor raise any question thereabout in connection with this appeal, and requests that this question be decided upon its merits. In view of the gravity of the case, this Court fully concurs in this position.

The rule that it is always the duty of the prosecuting attorney to treat the defendant in a fair and impartial manner applies to his argument to the jury.

Attorneys in making arguments to juries should, of course, try always to confine themselves to the evidence adduced in the trial. It is very difficult, as heretofore repeatedly held by this Court, to draw the line between proper and improper argument.

"It is most certainly proper, especially in criminal cases, that counsel, in addressing the jury, should keep themselves strictly within the record. This rule is essential, and must be enforced; but from the very nature of the case some lati-

tude in argument must necessarily be allowed. It is often matter of difficulty to draw the line sharply between legitimate argument and unauthorized statement—between what is and what is not allowable; and, as this pertains to the conduct of the cause, it must, to a large extent, be left to the wise discretion of the Circuit Judge. We could not affirm that the omission of the Circuit Judge to restrain the solicitor in his argument was such error of law upon his part as to authorize this Court to set aside the verdict on that ground." *State v. Robertson,* 26 S. C., 117, 1 S. E., 443.

In the foregoing case the solicitor, it was alleged, in his argument, went outside of the testimony and was permitted to urge upon the jury that the defendant, prior to the time of the alleged felony, had committed an assault and battery on a woman, and was dodging around evading arrest at the time of the alleged felony.

In *State v. Duncan,* 86 S. C., 370, 68 S. E., 684, 685, ██ Ann. Cas., 1912-A, 1016, Mr. Justice Hydrick, speaking for the Court, had this to say: "It is argued that it is impossible to say when and to what extent the case of a litigant is prejudiced by the unauthorized statements of counsel. But it certainly will not do to say that for every departure from the record, the verdict of the jury will be set aside. If the record shows that no other verdict could have been found upon any reasonable view of the evidence, we are safe in concluding that no harm was done. If, however, an examination of the record and consideration of all the circumstances, imputing fair and average intelligence and honesty of purpose to the jury, leads to the conclusion that the result was probably affected, then, we think, a fair and impartial administration of the law demands a new trial." Also, see *State v. Williamson,* 65 S. C., 242, 248, 43 S. E., 671.

Following this rule, it is safe to say, from the reading of the record in this case, that it shows that the trial jury could have found no other verdict upon any reasonable view of the evidence.

Shortly after the homicide, the defendant was committed to the State Hospital for observation, under order of the Court, which was consented to by the solicitor. He remained there for a period of thirty-seven days, after which he was returned to the county jail at Winnsboro. Three doctors from the State Hospital testified at his trial. They stated that in their opinion the defendant was sane; that his alleged insanity was a pose, pretensive, and feigned.

While he was in the county jail, Dr. Buchanan, who had known him for five or six years, had him under observation, upon request of his family. Dr. Buchanan, whose testimony is referred to by the trial Judge, was summoned by the State, and gave his unqualified opinion that the defendant was sane, and that his insanity was counterfeit.

Dr. Buchanan, during the five or six years preceding the homicide, had seen the defendant often, and had attended him and his family professionally. He stated that in the last conversation he had with the defendant in the jail, prior to the trial, he told the defendant that he was "putting on." That the defendant thereupon "broke down," "quit all this foolishness," "talked to me in a sensible manner," and said that "he killed this little boy because he listened to a lot of damn lies."

The issue of insanity was thoroughly tested in the trial, and the jury adopted the view of the State.

But aside from this, we think that the argument to which objection has been taken, was relevant, and that the inferences and conclusions drawn by the solicitor, reasonably and legitimately arose out of the evidence on the whole case.

We find no prejudicial error in the refusal of the trial Judge to grant a new trial on this ground.

We have discussed all of the questions upon which this appeal is based. However, in the oral argument of the case before this Court, counsel for the appellant called our attention to the fact that the record showed that the State, in the process of drawing the trial jury, had exercised six challenges instead of five. They made no mo-

tion with respect to the matter, but merely called the situation, as it appeared in the record, to the attention of the Court. On the Court's own motion, counsel for the appellant and the prosecuting attorney were requested to furnish the Court with affidavits with reference to the correctness of the record. Thereafter affidavits were submitted, from the official stenographer, from Mr. Walter W. Lewis, clerk of the Court of Fairfield County, Chalmers Tennent, a juror, Solicitor Finley, and by counsel for the appellant.

It is perfectly apparent from these affidavits that the stenographer was in error when he made the notation that the juror, Chalmers Tennent (the nineteenth juror called), was excused by the State. It is obvious that this juror was objected to by the defense, and excused from service. The record contains this agreed statement: "The nineteenth juror drawn was Chalmers Tennent, who was put on his *voir dire*. The Court refused to stand this juror aside and the defense was again forced to use a challenge to dispose of this juror." In their affidavit, counsel for the appellant state that they have no independent recollection of the question under discussion, and prefer to stand by and rely upon the official record.

The affidavit of Mr. Lewis, the clerk of the Court, whose duty it was under the law to make a written record of the challenges made by the State and by the defense, and who was present at the trial and in charge of the drawing of the petit jury in this case, indubitably shows that there was no departure from the law. The State exercised the five peremptory challenges allowed it by law, and the defense exercised the ten peremptory challenges allowed by law. The names of the jurors so challenged are set down in the official record kept by the clerk, and their names are given in his affidavit. This affidavit likewise contains the names of the twelve jurors who sat upon the trial of the case.

Upon a reading and consideration of these affidavits, we have no hesitation in reaching the definite conclusion that

no irregularity or illegality existed in the drawing of the petit jury in this case. If the Court entertained the slightest doubt with reference to this question, the defendant would be given the benefit of that doubt. This question arising, as it did, during the oral argument of the appeal before us, merely emphasized the duty, which always presses upon this Court, to seek for any error which may have been prejudicial to a defendant when the issue is life or death.

No errors of law exist in the record, and the jury by their verdict settled the facts. All exceptions are overruled.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate.