16634

STATE v. LEWIS
(71 S. E. (2d) 308)

*Mr. C. Yates Brown,* of Spartanburg, *for Appellant,* cites:

*Mr. Samuel R. Watt, Solicitor,* of Spartanburg, *for Respondent.*

June 5, 1952.

OXNER, Justice.

Upon an indictment charging him with the murder of Peggy S. Vasquez on June 2, 1951, appellant was found guilty without recommendation to mercy, and sentenced to death by electrocution. On the trial of the case he admitted the killing and interposed a plea of temporary insanity.

There are only two exceptions. One relates to the holding of the trial Judge that a certain juror was not disqualified, and the other to the exclusion of testimony. Before considering these exceptions, we shall briefly state the facts leading up to the homicide, which are in the main undisputed.

Appellant, who is 26 years of age, has lived in Spartanburg County all his life with the exception of four years spent in the Navy. After being discharged in July, 1946, he worked in various restaurants. In May, 1950, he met the deceased who was living in a Spartanburg hotel. Appellant was then a married man with two children, but apparently was not living with his wife. After going with deceased about a month, he commenced living with her in the hotel. In March, 1951, he secured a divorce from his wife. About this time he and the deceased moved into an apartment at the home of his mother, where they kept house and lived as man and wife. Although appellant suggested marriage several times, the answer of the deceased was always indefinite.

Two or three months before the homicide appellant secured a job at a cafe in the city of Spartanburg and four or five weeks later the deceased was also employed there. Both worked at night. Appellant testified that shortly after the deceased started working at this restaurant, she began flirting with various men who came into the cafe. He says he remonstrated but she persisted in this conduct.

On the night preceding the homicide there seems to have been an argument in the cafe between deceased and appellant, who claimed that she was being too familiar with several customers. During the night all drank some liquor. About seven o'clock the next morning the owner of the cafe arrived and after some argument, appellant quit work. The owner, claiming that he was disorderly, called the police. Upon arrival of the officers, appellant left but about an hour later returned and started blowing the horn of deceased's car which was parked in front of the cafe. When she did not come out, appellant says that he became so furious he

"knocked out the glass on the dash and pulled the wires from under the car." The police were again called. After this incident, appellant went home and slept for four or five hours. Between two and three o'clock in the afternoon, his sister drove him to town and left him at the cafe. He gave her $100.00 and told her if he got in jail she could come and get him out. Another argument then ensued between him and the deceased which seems to have been precipitated by her statement that she was not going to live with him any longer and would return to the hotel. Shortly thereafter appellant went to a store where he bought a .22 pistol and some cartridges. He returned to the cafe around four o'clock but the deceased had left. He found her at a nearby parking lot where she was sitting in her car under the steering wheel, with the eight year old son of the cafe owner beside her. Following a brief discussion of the plans of the deceased to leave him, appellant, who was standing by the car, shot her. She then got out or fell out of the car and while lying helpless on her back, he shot her again several times. Death was almost instantaneous. Appellant left immediately and was shortly thereafter taken into custody at his home.

We shall first consider the exception relating to the qualification of the juror Kit West. All the jurors were examined on their *voir dire*. After the Court had propounded the usual questions to Mr. West, including an inquiry as to whether he was opposed to capital punishment, to which he replied in the negative, the following occurred:

"The Court: He is qualified.

"Mr. Watt: Present the juror.

"The Court: Mr. West, you are the juror who spoke to me in the lobby on yesterday? A. Yes, sir.

"The Court: I think it only fair for the record to show in this case, in the case of this juror, that in a previous case, this juror answered the question by stating that he was opposed to capital punishment. Thereafter, he approached me in the lobby of the courthouse for the purpose of stating to

me that he had misunderstood the question and that if he were called again and answered the question differently, he wanted me, as judge of the Court, to understand why the question was answered differently, it being, according to his statement, a misunderstanding of the question."

Counsel for appellant thereupon requested the Court to excuse the juror, after which he was further examined by the Court as follows:

"The Court: Mr. West, did I state the facts correctly, according to your understanding, that you did misunderstand the question at a previous trial? A. Yes, sir, I misunderstood it.

"The Court: Would the fact that this has happened influence you in the decision of this case if you should be taken on this jury? A. No, sir.

"Q. Would you give to the State and to the defendant a fair and impartial trial? A. Yes, sir.

"Q. Based on the law and the evidence as presented in this case? A. Yes, sir.

"The Court: I think this juror is qualified. I don't believe this happening, in the light of the questions, would disqualify him in the case."

It was again contended that Mr. West was disqualified, but the Court adhered to its ruling. Appellant's counsel, who at this time had exhausted eight of his ten challenges, with four additional jurors to be selected, failed to exercise the right to peremptorily challenge Mr. West and he was sworn and sat on the case.

The "previous case" referred to by the Court was another murder case tried at the same term. It is claimed by appellant that the foregoing incident placed the juror West "on the defensive", and that he would "be inclined to more readily vote for a sentence of guilty than if no such statement had been made."

Questions of this kind are addressed largely to the discretion of the trial judge. *State v. McDonald,* 184 S. C. 290,

192 S. E. 365; *State v. Middleton,* 207 S. C. 478, 36 S. E. (2d) 742. We find no abuse of discretion. There is no reasonable basis for the claim that the incident mentioned would influence this juror against recommending mercy or otherwise prevent him from giving the case fair and impartial consideration.

The remaining exception relates to the refusal of the trial Judge to permit appellant to explain the presence of certain scars on his arm and abdomen, which he says were made in 1941 by cutting himself with a razor blade under the following circumstances:

"I was going with a girl and she made me so mad, I just picked up a razor blade and just whacked. A good friend of mine come grabbed me and took me to the General Hospital and I had them sewed up. And then the same girl I was going with got me so mad I grabbed a drinking glass and cut the muscle wide open. Didn't go to no doctor there. I woke up in the city jail. I got almost over her and then I rammed my fist through a window glass."

He further testified that on account of the foregoing occurrence he was fined in the police court "for drunk and disorderly conduct."

After hearing the foregoing testimony in the absence of the jury, the court concluded that it was incompetent. It is stated in appellant's exception that this testimony would have shown "the mental balance of the defendant and the extremes to which he would go when upset over domestic relations and private troubles" and when thus upset, "he would lose his perspective and attempt to destroy himself because of temporary insanity and mental unbalance."

We think the proffered testimony was properly excluded. According to appellant's mother, he was 26 years of age at the time of the trial. If so, the incidents sought to be established occurred when appellant was only about 16 years of age. They were too remote in point of time. Moreover, the facts disclosed by the excluded testi-

mony do not show insanity. *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) ·130.

As usual where the death penalty is involved, we have carefully examined the record for any errors affecting the substantial rights of the accused, even though not made a ground of appeal. We find none. The undisputed facts reveal an atrocious killing. There is little, if any, support in the record for the defense of temporary insanity. The only verdict reasonably warranted by the facts is that of murder. The jury declined to recommend mercy, which was their prerogative and not ours. There is no basis for disturbing the verdict and sentence imposed.

Affirmed.

BAKER, C. J., FISHBURNE and TAYLOR, JJ., and E. H. HENDERSON, A. A. J., concur.